## *In re* MASSEY.

(*District Court, E. D. Arkansas, W. D.* October Term, 1890.)

ELECTIONS OF CONGRESSMEN—ENFORCEMENT OF FEDERAL LAWS—INSPECTION OF BALLOTS.

The laws of the United States concerning elections at which congressmen are elected are paramount, and Mansf. Dig. Ark. § 2694, providing that "the judges of election shall securely envelop all the ballots which may have been received under seal, and return the same to the clerk of the proper county, which shall in no event be opened except in case of a contested election," cannot be held to justify the refusal of the clerk to produce the ballots before the grand jury of the United States, pending an investigation into alleged violations of federal election laws.

Rule to Show Cause why respondent should not be committed for contempt.

In response to a rule to show cause why respondent, a county clerk, should not be committed for contempt in refusing to bring the ballots cast at a congressional election, before the grand jury the respondent filed the following answer:

"The respondent would respectfully represent to this honorable court that, in compliance with the *subpœna duces tecum* served on him by the marshal of said district, a certified copy of which, together with the orders of this honorable court under which the summons issued, and the return of the marshal thereon, is hereto attached and made a part of this response, he appeared before the grand jury for the purpose of answering, and did answer, all questions propounded to him by said body, and also produced the poll-books of the election in Wellborn township in said county, in obedience to the directions contained in said writ. The respondent would further represent to this honorable court that he is the county clerk within and for Conway county, state of Arkansas; that he is not by the laws of said state an election officer, and has no duties to perform in connection with elections, except as hereinafter stated; that by the provision of the statute of the state of Arkansas the county court is required at its last term, held more than 30 days before any election, to appoint three discreet persons in each township, having the qualifications of electors, to act as judges of election within the township, and the judges so appointed shall select two persons having the like qualifications to act as clerks thereof; that all elections are held by said judges and the clerks to be by them appointed. It is by law the duty of the clerk of the county court at least twenty-five days before a general election to make out and deliver to the sheriff of the county two blank poll-books for each township in his county, properly laid off in columns, with proper captions, with forms of oaths and certificates attached thereto, and it is by law made the duty of the sheriff forthwith to deliver such books to the judges of elections within their respective townships. The judges of elections, before entering upon their duties, are required to take an oath that they will perform the duties of judges of the election according to law, and to the best of their knowledge and abilities, and will studiously endeavor to prevent fraud, deceit, and abuse in conducting the same, and will not disclose how any elector shall have voted, unless required to do so in a judicial proceeding, or a proceeding to contest an election. The clerks of election are required, before entering on their duties, to take an oath that they will faithfully record the names of all voters, and that they will not disclose how any elector shall have voted, unless required to do so as a witness in a judicial proceeding, or in a proceeding to contest an election. That, after canvassing the votes cast at the election, the judges, be-

fore they disperse, are required to put under cover one of the poll-books used at such election, seal the same, and direct it to the clerk of the county court, and the poll-books, thus sealed and directed, shall be conveyed by one of the judges to the clerk of the county court within three days after the close of the polls, and the other poll-books shall be retained by the judges of elections, free for the inspection of all persons. On the fifth day after the election, or sooner, if all the returns have been received, the clerk of the county court shall take to his assistance two justices of the peace of the county, if they can be conveniently had, and, if not, then two householders having the qualifications of electors, and shall proceed to open and compare the several election returns which have been made to his office, and make abstracts of the votes given for the several candidates for each office on separate sheets of paper. Such abstracts, being signed by the clerk and justices or householders, or any two of them, shall be deposited in the office of the clerk of the county court, therein to remain. Each clerk, in comparing the returns of election, shall do it publicly in the court-house, or in the place in which the courts are usually held, first giving notice of the same by public proclamation at the door. The clerks of the county courts of the several counties of this state, when they shall call in two justices of the peace or householders to assist them in comparing the poll-books of the several townships of their respective counties, shall proceed to add and count all the votes for the several persons therein voted for, regardless of any informality whatever. Each clerk of the county court shall, within two days after the examination and comparison of the returns of any election, deposit in the nearest post-office, on the most direct route to the seat of government, certified copies of the abstracts filed in his office of the returns of the election for members of congress, and all executive, legislative, and judicial officers, directed to the secretary of state, and he shall, at the same time, inclose and direct to the speaker of the house of representatives at the seat of government a certified copy of the abstract of votes given for governor, secretary of state, auditor of state, treasurer of state, and attorney general. The foregoing are the principal duties imposed by law upon county clerks, in connection with the ascertainment of the result of elections. Section 3, art. 3, of the constitution of Arkansas, provided: 'All elections by the people shall be by ballot. Every ballot shall be numbered in the order in which it shall be received, and the number recorded by the election officers on the list of voters opposite the name of the elector who presents the ballot. The election officer shall be sworn or affirmed not to disclose how any elector shall have voted, unless required to do so as a witness in a judicial proceeding, or a proceeding to contest an election.' Section 2694 of Mansfield's Digest of the Laws of Arkansas provides: 'It shall be the duty of the judges of elections in the respective townships throughout the state, after such election shall have been closed, as provided for in the foregoing sections, securely to envelop all ballots which may have been received in accordance with the provisions of this act under seal, and return the same to the clerk of the proper county, which shall in no event be opened except in case of a contested election.' Section 27 of the Revised Statutes of the United States provides: 'All votes for representatives in congress must be by written or printed ballot, and all votes received or recorded contrary to this section shall be of no effect.'

"The respondent would further respectfully represent to this honorable court that he is by law the official custodian of the ballots cast in all elections held in said county for state, county officers, or members of congress. That the ballots referred to in the *subpœna duces tecum,* issued and directed to him as aforesaid, were cast in an election held for a member of congress. That said ballots were returned by the judges of said election to respondent under seal, and are now held in his custody, in his official capacity under seal, as

the same were returned to him by the aforesaid judges. And the respondent understands and is advised that under the laws of said state, and by virtue of the act of congress in that behalf provided, he not only has no power, but is prohibited from opening said ballots, excepting in the case of a contested election, and respondent would by such violation of law subject himself to criminal prosecution for a misdemeanor in office, and to removal from office under the laws of this state.

"Respondent would further represent and show to this honorable court that by the adjudication of the supreme court of the state in the construction of the constitution and statutes of the state, that being the highest court provided for by the constitution and laws of the state, the county clerk, as the custodian of the ballots, has no power to permit the same to be opened by any person or for any purpose, except in the case of a contested election. And he is advised and represents that the laws of the state and the aforesaid decisions are binding upon him in this tribunal, and that he cannot, except in the case of a contested election, open said ballots, or bring the same before this honorable court or the grand jury, to be opened in pursuance of the *subpœna duces tecum* served on him as aforesaid.

"Respondent further saith [sayeth] there is no contested election case pending before the grand jury, or before this honorable court, in which he is required to produce the aforesaid ballots, nor is there any criminal cause or charge upon oath, information, indictment, or other lawful mode, instituted, returned into, or now pending in, this honorable court, or before the grand jury, or any judicial proceeding before the court or the grand jury, in which he is required, by the aforesaid order of this honorable court, and the writ issued thereunder, to produce the aforesaid ballots, in order that the same may be opened and examined. And he is further advised to state that, if there were a judicial proceeding pending before this honorable court, or before the grand jury, other than in the case of a contested election, he would not, under the constitution and laws of the state of Arkansas, have the power or authority to produce and open said ballots.

"Wherefore respondent respectfully submits that he cannot lawfully bring the same before this honorable court, or the grand jury, for the purpose of being opened, without violating his official duty under the laws of the state and of the United States, for which reason, and not from any intention to disregard the process of this honorable court, respondent is advised and feels constrained to decline to produce and open said ballots.

"Wherefore respondent respectfully prays that this honorable court may, in the light of the facts herein stated, discharge him from the rule to show cause, and permit him to go hence."

*C. C. Waters*, U. S. Atty., and *John McClure*, for the United States.
*John M. Moore*, *W. L. Terry*, and *J. W. House*, for respondent.

WILLIAMS, J. At a former day of this court, the United States district attorney, representing to the court that at the general election for members of congress, held on the 5th day of November, 1890, there was reason to believe that the judges of election for Welborn township, in Conway county, had not discharged their duties in accordance with the law, but had made a false return of the votes cast at that precinct at the election, and that he desired to lay said matter before the grand jury, then in session, and asked that a *subpœna duces tecum* issue to the respondent, the clerk of Conway county, to bring before the grand jury the poll-books and ballots of the election so held at said precinct. At his request the

*subpœna* was issued, and the clerk appeared before the grand jury, bringing with him the poll-books of the election, but failing to bring the ballots cast in the precinct at the election. The grand jury reported in open court that the witness refused to produce the ballots, and, upon his being interrogated in open court by the court, he still refused to produce the ballots; stating that, while he desired not to be considered in contempt of the court, he had been informed by counsel and he believed it to be a violation of his duty as clerk to permit the ballots in his possession, cast at the election, to go out of his possession, or to be opened and inspected by any persons, except in a case of contested election; and the attorney general of the state of Arkansas stating to the court that, on behalf of the state, he desired to present the matter to the court by way of a response of the clerk, respectfully submitting that by Const. Ark. art. 3, § 3, and Mansf. Dig. Ark. § 2694, the clerk was prohibited from parting with the possession of the ballots, or allowing the same to go out of his possession, or to be opened by any one, except in case of contested election.

The question to be determined by the court is whether, by the act of congress and the laws of the state of Arkansas, the custodian of ballots cast at an election held for members of congress, pursuant to said laws, may be compelled by a federal court, in the administration of the criminal law of the United States, to produce the ballots cast at said election or not. It is not contended by the able counsel who represent the respondent and the state of Arkansas but that the general government has the right, under the constitution, to pass laws regulating the manner of holding elections for members of congress in the several states, nor that, in the holding of elections under said laws, the election officers appointed under the state laws become officers of the general government, as well as of the state, and that they are amenable to the government for violations of said laws; so that it would seem that the only question that need be passed upon is whether the laws of the United States so passed are paramount if they are in conflict with any state law. And upon this point it is only necessary to cite the case of *Ex parte Seibold*, in 100 U. S. 371, to settle the question. In that case the supreme court of the United States, in language not to be misunderstood, declares that the power of the United States in the enforcement of said laws, and in the conduct of elections thereunder, is paramount. The court in that case (BRADLEY, Justice) uses the following language:

"The objection that the laws and regulations, the violation of which is made punishable by the acts of congress, are state laws, and have not been adopted by congress, is no sufficient answer to the power of congress to impose punishment. It is true that congress has not deemed it necessary to interfere with the duties of the ordinary officers of election, but has been content to leave them as prescribed by state laws. It has only created additional sanctions for their performance, and provided means of supervision, in order more effectually to secure such performance. The imposition of punishment implies a prohibition of the act punished. The state laws which congress sees no occasion to alter, but which it allows to stand, are in effect adopted by congress. It simply demands their fulfillment. Content to leave the laws as

they are, it is not content with the means provided for their enforcement. It provides additional means for that purpose, and we think it is entirely within its constitutional power to do so. It is simply the exercise of the power to make additional regulations. That the duties devolved on the officers of election are duties which they owe to the United States, as well as to the state, is further evinced by the fact that they have always been so regarded by the house of representatives itself. In most cases of contested elections the conduct of these officers is examined and scrutinized by that body as a matter of right, and their failure to perform their duties is often made the ground of decision. Their conduct is justly regarded as subject to the fullest exposure, and the right to examine them personally, and to inspect all their proceedings and papers, has always been maintained. This could not be done if the officers were amenable only to the supervision of the state government which appointed them. Several other questions bearing upon the present controversy have been raised by the counsel of the petitioners. Somewhat akin to the argument which has been considered is the objection that the deputy-marshals authorized by the act of congress to be created and to attend the elections are authorized to keep the peace, and that this is a duty which belongs to the state authorities alone. It is argued that the preservation of peace and good order in society is not within the powers confided to the government of the United States, but belongs exclusively to the states. Here again we are met with the theory that the government of the United States does not rest upon the soil and territory of the country. We think that this theory is founded on an entire misconception of the nature and powers of that government. We hold it to be an incontrovertible principle that the government of the United States may, by means of physical force, exercised through its official agents, execute on every foot of American soil the powers and functions that belong to it. This necessarily involves the power to command obedience to its laws, and hence the power to keep the peace to that extent. This power to enforce its laws and to execute its functions in all places does not derogate from the power of the state to execute its laws at the same time and in the same places. The one does not exclude the other, except where both cannot be executed at the same time. In that case, the words of the constitution itself show which is to yield: 'This constitution, and all laws which shall be made in pursuance thereof, * * * shall be the supreme law of the land.' "

The provisions of the constitution of the state of Arkansas, and of the laws pertaining to elections enacted thereunder, are as follows:

Section 3, art. 3, of the constitution:

"All elections by the people shall be by ballot. Every ballot shall be numbered in the order in which it shall be received, and the number recorded by the election officers on the list of voters opposite the name of that elector who presents the ballot. The election officers shall be sworn or affirmed not to disclose how any elector shall have voted, unless required to do so as witnesses in a judicial proceeding, or a proceeding to contest an election."

Section 2691 of the election law is as follows:

"It shall be the duty of the judges of elections in the respective townships throughout the state, after said elections shall have been closed, as provided for in the foregoing sections, securely to envelop all ballots which may have been received, in accordance with the provisions of this act, under seal, and return the same to the clerk of the proper county, which shall in no event be opened except in case of a contested election."

Section 5515 of the United States Revised Statutes, relating to the conduct of elections for members of congress, is as follows:

"Sec. 5515. Every officer on an election at which any representative or delegate in congress is voted for, whether such officer of election be appointed or created by or under any law or authority of the United States, or by or under any state, territorial, district, or municipal law or authority, who neglects or refuses to perform any duty in regard to such election required of him by any law of the United States, or of any state or territory thereof, or who violates any duty so imposed, or who knowingly does any act thereby unauthorized, with intent to affect any such election, or the result thereof, or who fraudulently makes any false certificate of the result of such election in regard to such representative or delegate, or who withholds, conceals, or destroys any certificate of record so required by law respecting the election of any such representative or delegate, or who neglects and refuses to make and return such certificate as required by law, or who aids, counsels, procures, or advises any voter, person, or officer to do any act by this or any of the preceding sections made a crime, or to omit to do any duty, the omission of which is, by this or any such sections, made a crime, or attempts to do so, shall be punished as prescribed in section fifty-five hundred and ten. See section 5511."

Now, conceding that the laws of the United States in relation to the election of members of congress are paramount, and that the courts of the United States, as provided by said laws, have jurisdiction to inquire into and punish all violations of said laws, it may well be asked how it is possible to enforce or carry out the provisions of the section just quoted without an examination of the ballots returned by the judges and clerks of election of a precinct to the county clerk? Suppose that the charge against the election officers is that they have made a false return of the votes cast by the electors at said election,—*i. e.*, that they have certified that A. received a certain number of votes, when an inspection of the ballots cast at said election would show the fact to be that said certificate so made was false and fraudulent,—in what manner could the fact of their crime be established, except by an inspection of the ballots? The court can conceive of no other method of ascertaining that fact, and to hold that, by the provisions of the constitution and laws of the state of Arkansas, said ballots cannot be opened or inspected except in a case of contested election, would render inoperative the section just quoted. Referring again to the law of the state as to the ballots. It will be conceded that there is no tribunal in the state, or created by the constitution or laws of the state, that can inaugurate, carry on, or determine a contest for a member of congress; and this, of itself, makes it apparent to me that these provisions of the constitution and laws of the state can only refer to ballots cast at an election for officers whose election can be contested by the state tribunals, and not those cast at an election for members of congress. Here the matter might very properly be left and the response be held insufficient; but I desire to refer to other matters urged by counsel, as it is charged that to compel the production of the ballots before the grand jury is an overriding of the laws of the state by the federal courts which ought not to be indulged in.

Much might be said as to the fact whether, under the constitution of the state of Arkansas, the ballot, after it passes out of the hands of the election judges, is in any manner a secret ballot or not. That the word "ballot" implies secrecy is unquestioned, and, if it was provided that

the election shall be by ballot, and nothing further was said, then it would be without doubt the right of the elector to have the secrecy of the ballot preserved from impertinent or improper inspection; but it will be observed that the constitution and laws of the state of Arkansas provide that the election officers shall place a number upon the ballot cast by the elector to correspond with the number opposite his name upon the poll-book. In adjudications by state courts of different states this seems to be held to be destructive of the secrecy of the ballot. The constitution of the state of Indiana provided that elections should be by ballot, but the legislature of that state enacted a law containing similar provisions to the law of this state, i. e., that the ballot cast by the elector should be numbered, etc. The supreme court of that state held that this law was unconstitutional, inasmuch as it impaired the secrecy of the ballot, and in all states where the matter has been adjudicated it is held that any marks placed upon the ballot are destructive of its secrecy. In some of the states it is held that the ballot must be of certain dimensions, and of certain color, and any departure from this, either as to dimensions or color, or any marks placed thereon, is held to actually invalidate the ballot cast, presumably because it destroys the secrecy of the ballot. But it is contended by counsel in this case that the supreme court of the state in *Jones* v. *Glidewell*, 53 Ark. 161, 13 S. W. Rep. 723, have held that the ballot in this state is a secret ballot, and I will accede to that contention, although it is not clear to my mind that this point was before the court in that case.

This brings me to the consideration of what I deem an important proposition in this case, and that is, admitting the secrecy of the ballot, and the full force and effect of the constitution and laws of the state of Arkansas, do they prohibit the courts of the state, in the enforcement of the criminal law of the state, from having access to the ballots in order that violations of the law by election officers shall be punished? At the very first inception of this case this court announced its opinion that there was no law to prevent the courts of the state from requiring any election officer to produce the ballots before a proper legal tribunal, in order that crime may be punished, and the rights of the electors be protected. To hold otherwise would be allowing election officers to tamper with the most sacred rights of the elector, and shield themselves from punishment by saying that they are not permitted to produce the ballots, as is done in this case. If the effect of the provisions of the constitution and the election law is as contended for by the attorneys representing the respondent, then it may be asserted that the state, in its organic law, and by act of its legislature, has provided an engine for its own destruction, because, if the election officers cannot be punished for a false and fraudulent return of the votes cast at any election, then the state is entirely at the mercy of such election officers, and, if a sufficient number can be found who will so certify such fraudulent returns, and there is nothing left for the state or the persons elected at such election but the tedious results of a contest, and they are not deterred by a wholesome fear of a criminal prosecution, then it is easy to conceive that an-

archy would reign, instead of law and order.    The individual elector is much more concerned, and his interests are much better subserved by a proper enforcement of the criminal law against election officers, who would make a fraudulent return of a vote cast by him, even though to do this the ballot that he cast must be produced before the tribunal endeavoring to punish such officers, than by a sentiment which would preserve inviolate the secrecy of his ballot.    A high court of the state of Pennsylvania says that the purity of the ballot is of much more importance than the right of the elector to have it preserved secret, and as against that doctrine I fail to find any dissent by the highest tribunals of any state.    And it would seem to be a singular contention that after a contest at which the ballots were opened, and clearly showed that the election officers at any precinct, or any number of precincts, had made a false or fraudulent return of the votes cast at an election, thus establishing their wrong-doing clearly and unequivocally, that the ballots showing this must, after the contest is ended, be returned to the custodian of the same, there to remain, and the state be left powerless to prosecute and convict the prepetrators of the wrong and fraud and outrage because the ballots cannot be produced or opened, or taken from the immediate keeping of the custodian, except in a case of contested election.    Because, if they cannot be taken before the contest, they can no more be taken after the contest, because the provision of the law urged by the respondent in this case is that the ballots shall not be opened except in a case of contested election.

The remedy to the citizen which is urged as the only one, i. e., a contested election, is not the one that he would seek, or can seek, where his right as a citizen to cast a ballot, and have it counted as cast, has been taken from him by the fraudulent action of some election officer. Unless the officer injured sees fit to make a contest, no contest can be had, and there are some elections where, the court conceives, by the laws of the state, even the right to contest would be vain and delusive.    For instance, it is provided that at every general election the electors of the state at the various voting precincts shall cast a ballot for or against the granting of a license in the townships, wards, and counties of the state; and suppose that the election officers at any precinct or number of precincts should return and certify the vote that was cast against license, if you please, as being cast for license.    Under the laws of this state, what tribunal of justice would open its portals for the men who have thus sought to establish temperance in their townships or their counties to make a contest?    In looking over the election laws of the state, it is quite difficult to fix upon any forum or form or manner of making a contest to show how the vote actually stood as cast, and, unless the election officer should be restrained by the strong hand of the law, and deterred by the fear of a criminal prosecution, it is not a violent supposition nor an empty fear that the rights of the elector under this law would often be trampled under foot.    I cannot for a moment believe that it ever was the intention of the framers of the constitution or of the lawmakers of the state, by saying that ballots should remain in the hands

of the clerks of the various counties, and not be opened except in a case of contested election, that it should prohibit the courts of the state to preserve the life of the state, and punish crime and deter criminals, by producing before grand juries and courts the ballots cast at any election whatever. *"Rex legi subjectus est"*—"The king is subject to the law"— is a maxim co-existent with the *Magna Charta,* and is but a terse and forceful expression of the fact that in a government of laws all, from the highest to the lowest, are amenable to the law.

But, if the propositions urged by the respondent are to prevail, the election officers referred to, who are popularly supposed to be the servants of the people, are above the law, and may thwart the will of the people with impunity. It is attempted in the argument to put this secrecy of the ballot upon the same ground with privileged communications, such as those made at the confessional, to the lawyer, to the physician, or that are made between husband and wife. What ground there is for this contention I fail to see. There is reason that the communications thus made, and which have ever been considered privileged, should be so, for they relate to statements and confessions that possibly endanger the life, liberty, the property, or the fair fame of the person making the communications, or else they are made in the secrecy and confidence of the marriage relation, the disturbing or destruction of which may well be said to be against well-established public policy. But here the person whose rights are affected—*i. e.,* the citizen who casts the ballot—is making no demands that the secrecy shall be preserved. He is in no manner affected in his life, his liberty, or his estate by the divulging of the fact as to how he has cast his ballot, but, as has been shown, his rights often can only be protected by the examination of the ballots, to see if they have been correctly returned.

So, upon this view of the case, independently of the question as to the paramount effect of the federal laws in regard to these elections, I hold that the response of the clerk of the circuit court of Conway county in this case is utterly insufficient.