Ex Parte Arnold.

*Ex parte* ARNOLD, *Recorder of Voters.*

In Banc, April 30, 1895.

1. **Constitution**: GRAND JURY: EXAMINATION OF BALLOTS: ELECTION FRAUDS. The court can not compel the production of ballot boxes before the grand jury for their examination while investigating election frauds. (Constitution, art. 8, sec. 3.)

2. ——: ——: ——: ——. Constitution, article 8, section 3, limits the right of the examination of ballots to election contest cases.

3. **Habeas Corpus**: CONTEMPT. A person committed for contempt for disobeying an order which the court committing him had no authority to make may be released on *habeas corpus* proceeding.

*Habeas Corpus.*

PRISONER DISCHARGED.

*Wm. T. Jamison,* prosecuting attorney, *James S. Botsford, Geo. A. Neal* and *R. E. Ball* for respondent, Stewart.

(1) The criminal court of Jackson county had authority, by virtue of its inherent powers as a court of record, proceeding according to the course of the common law, to issue process commanding petitioner to appear as a witness before its grand jury with the ballot boxes and ballots or to produce any other documentary evidence in his office to aid said grand jury in its investigation of crimes in said county. See Greenleaf on Evidence [Redfield's Ed.], sec. 309. (2) Prior

to the constitution of 1875 the criminal court of Jackson county was created a court of record with full power inherently to issue the writ in question on the petitioner for the production of the desired testimony, and it follows that the powers thus conferred on and possessed by that court from the time of its organization in 1871, still abide with that court in full vigor, unless they have been abrogated or abridged as respects the use of ballots and ballot boxes by the subsequent legislation or the provisions of the constitution subsequently adopted in 1875. (3) It can not be maintained that the inherent and common law powers of the criminal court of Jackson county, in respect of its authority to compel the production of ballots for use as evidence by the custodian thereof, have been diminished or abrogated by any statutory provision. On the contrary the statutes of Missouri in force both prior and subsequent to the creation of that court recognize the existence of that power. (4) "The chief office of the American state constitution is to limit and restrain and not to grant governmental powers. Written constitutions sanctify and confirm great principles but the latter are prior in existence." Cooley's Const. Lim. [5 Ed.], p. 47, notes. The constitution of 1875 conferred no new power on the judicial power of the state. See arguments of Edward Bates in *Hamilton v. St. Louis Co.*, 15 Mo. 13; *Brown v. Fifield*, 4 Mich. 322. (5) The utterances in conflict with these views expressed in *Ewing v. Francis*, 88 Mo. 561, and *State ex rel. v. Board of Public Schools*, 112 Mo. 213, are but *dicta* and are at variance with the reasoning of the court in the well considered opinion of this court in *State ex rel. v. Hoblitzelle*, 85 Mo. 620.

GANTT, J.—The petitioner is the recorder of voters of Kansas City. The law creating his office and defin-

VOL. 128—17

ing his duties requires him at each election in said city, under the laws of this state and the charter of said city, to receive the ballot boxes containing the ballots cast at such election from the judges of each precinct. In his application for the writ of *habeas corpus* he represents that on the thirteenth day of March, 1895, the criminal court of Jackson county made the following order:

"Now at this day comes the grand jury in a body into open court and presents to the court a petition for an order on the recorder of voters of Kansas City, Missouri, to furnish for inspection certain ballot boxes used in the general election of November 6, 1894, which said petition being duly seen and heard and considered by the court is by the court granted; and it is hereby ordered that the recorder of voters within and for the city of Kansas City, Missouri, produce the ballot boxes in the said precincts 2, 3, 4, 5, 6, 7, 22, 25, 26, 27, 28, 29, 48, 49, 52, 53 and 58, before the grand jury and that he allow the grand jurors to inspect the said ballots in the presence of the said recorder; and when the same shall have been examined by the said grand jurors that the said recorder shall safely return the said ballots and ballot boxes in the condition in which they were when presented to the said grand jurors, to the office of said recorder and to his custody and that the boxes and ballots for said precincts be produced to said grand jurors by taking before them the boxes of one precinct at one time and that the same be returned to the custody of the recorder before the boxes and ballots of another precinct shall be produced before the said grand jurors; and that all diligence and care be had that said ballots and boxes be not injured, mutilated or destroyed."

Said order was duly served upon the petitioner and under the advice of competent counsel he declined to obey said order, because he was advised it was a viola-

tion of his official oath and duty, and because said court, nor any other tribunal in this state, could lawfully require him to permit said ballot boxes to be opened and the ballots therein inspected, except in a case of a contested election, and then only under the regulations and restrictions prescribed by the laws of this state. And as a further reason for declining to obey said order he represented to said court that, prior to the making of said order by the criminal court, various contests for county offices in Jackson county, dependent upon the general election of 1894, had been inaugurated in the circuit court of Jackson county and said circuit court had ordered a recount of said ballots and said count was then proceeding and the petitioner was required by the circuit court to proceed with said work of counting and inspecting said ballots, *continuously until completed;* and without the presence of the recorder and the ballot boxes such recount in said contested elections could not proceed. That he was advised by his counsel that said circuit court having obtained jurisdiction over the person of petitioner and possession of said ballot boxes, he was not subject to the order of any court of coordinate jurisdiction until discharged by said circuit court.

Upon this return to its order the criminal court adjudged petitioner to be in contempt and issued its writ to the marshal of Jackson county commanding said officer to arrest and commit to his custody the petitioner. He was arrested by said marshal and is now under arrest and restrained of his liberty. From this imprisonment he seeks to be discharged by the judgment of this court.

It is a settled law in this state that one imprisoned for the violation of an order or judgment in excess of the jurisdiction of the court rendering it can be discharged by writ of *habeas corpus*.

I.   Did the criminal court of Jackson county have authority to require the recorder of voters to produce before the grand jury of that county the ballot boxes and break the seals thereon and permit that body to examine and inspect the ballots therein?   If it had, it must flow from the common law principle that all courts have the power to compel the production of the best evidence within the reach of their process, and it must logically follow that if the said criminal court may by its order break the seal upon said boxes and remove the veil of secrecy with which the constitution and laws of this state have invested the elector's ballot, then any other court may do the same thing.

As was said by Chief Justice BEATTY in *Ex parte Brown*, 97 Cal. 83: "A judge of the superior court acting in that capacity [as a committing magistrate] has no authority over the registrar of voters or the county clerk which is not fully shared by every police judge and justice of the peace in the state.   If he can order a sealed package of ballots to be opened for the purpose of obtaining evidence supposed to be material in the preliminary investigation of a criminal charge, so may any one of them.   There is indeed no middle course between holding that the ballots must be kept as the law   *   *   *   directs them to be kept, *i. e.*, sealed, and in the exclusive possession of the registrar or county clerk, or that any judicial officer of any grade may, in any judicial proceeding, civil or criminal, take them out of the possession and control of the officer charged with their custody, open them, and keep them during such time and subject to such precautions as he may deem necessary for the purposes of his investigation and the preservation of their integrity."

The constitution of Missouri ordains that "all elections by the people shall be by ballot."   There can be no doubt that these words, without qualification, were

understood, both by the people and the courts at the time of the adoption of the constitution to mean a *secret* ballot. When the constitution was submitted for ratification every state in the union, with the possible exception of Kentucky, had adopted that method of voting at elections by the people. The expression "election by ballots" had been expounded and construed by the various courts of last resort, and, with entire unanimity, they had declared it meant a *secret* ballot, and that the essential principle of this manner of voting was that the elector might conceal from every person the name of the candidate for whom he voted, or the character of his vote upon any question submitted to the electors at an election; that the manifest and obvious purpose was to protect the secrecy of the ballot in order to guard and protect the voter against intimidation and secure him entire freedom in the exercise of the elective franchise and reduce to a minimum the incentive to bribe the voter. Cooley's Const. Limitations [6 Ed.], 760, 762, 763; McCrary on Elections [3 Ed.], sec. 454; *Williams v. Stein*, 38 Ind. 89; *Brisbin v. Cleary*, 26 Minn. 107; *People ex rel. v. Cicott*, 16 Mich. 283; *Jones v. Glidewell*, 53 Ark. 161.

Under constitutions containing simply the provisions that "elections shall be by ballot," the supreme courts of Indiana and Minnesota held statutes which provided for numbering the ballot, unconstitutional. *Williams v. Stein, supra; Brisbin v. Cleary, supra.*

Section 3, article 8, of the constitution of this state is in these words: "Sec. 3. *Elections, how conducted and contested.* All elections by the people shall be by ballot; every ballot voted shall be numbered in the order in which it shall be received, and the number recorded by the election officers on the list of voters, opposite the name of the voter who presents the ballot. The election officers shall be sworn or affirmed not to

disclose how any voter shall have voted, unless required to do so as witnesses in a judicial proceeding: *Provided*, that in all cases of contested elections the ballots cast may be counted, compared with the list of voters, and examined under such safeguards and regulations as may be prescribed by law.''

At the time of the adoption of the constitution, a statutory method of contesting elections had been in force in this state for many years and the term "contested elections" had a well defined and well understood meaning as contradistinguished from other remedies for determining the title to offices in this state.

This article of the constitution has been twice construed by this court. In *State ex rel. v. Francis*, 88 Mo. 557, the proceeding was by *quo warranto* and it was held by this court that the courts had no power to open the ballot boxes in such a proceeding; that the right to count the ballots was confined to cases of contested elections and then only after the legislature had prescribed safeguards and regulations for the secrecy of the ballots; and that the state was as much bound by the organic law in this respect as any other suitor. That case was followed in *State ex rel. v. Board, etc., of Public Schools*, 112 Mo. 213, in which the second division of this court held an election of the school board in St. Louis was an election by the people and that a proceeding by said school board under its power to judge of the qualification and election of its members was not a contested election within the meaning of the law.

But it is now urged that, while in the opinion of counsel those cases were correctly decided upon the facts of each, so much of each of these decisions as ruled that the ballot boxes could only be opened and the ballots examined in a contested election case was *obiter*, and we are asked again to consider the question

upon principle. This we have endeavored to do and are firmly convinced that the criminal court had no power to require the ballot boxes opened for the inspection of the grand jury.

The provision as to numbering ballots, of course, removes the veil of secrecy, to a limited extent, from the ballot in the one case specified by the constitution, *but in no other*. Construed as a whole, section 3 of article 8 secures to the voter the right to vote without disclosing his choice to anyone, save in the one proceeding pointed out in the section itself. Without the proviso the prohibition against disclosing the contents of the ballot would have been absolute in all cases and under all circumstances. It is clear, we think, from the whole text of the article that the convention thoroughly canvassed the propriety of permitting the ballots to be opened and the choice of the voter made public and concluded that the protection afforded the elector by a secret ballot would be wholly inadequate and misleading if it extended no further than the occasion of depositing it in the box. In the language of Chief Justice DENIO, in *People ex rel. v. Pease*, 27 N. Y. *loc. cit.* 81, "the spirit of the system requires that the elector should be secured *then, and at all times thereafter,* against reproach or animadversion, or any other prejudice, on account of having voted according to his own unbiased judgment; and that security is made to consist in shutting up within the privacy of his own mind all knowledge of the manner in which he has bestowed his suffrage."

Not only is this conclusion deduced from the words "elections of the people shall be by ballot," which by universal acceptation and judicial construction mean and import a "secret ballot," but the use of the proviso, that they might under certain safeguards be again counted and examined in a contested election, indicate

most clearly that in the opinion of the convention, without this proviso and exception, the ballot boxes could not be opened, even in such a case, and, being limited to this one case, the canon of construction *"expressio unius, exclusio alterius"* is peculiarly applicable. That this maxim applies with as much force in the construction of constitutions as of statutes was pointed out in the dissenting opinion of SHERWOOD, Judge, in *State ex rel. v. Seibert*, 123 Mo. 434, and the authorities by him there collated.

Judge Cooley, in his Constitutional Limitations, says: "We are not, therefore, to expect to find in a constitution provisions which the people, in adopting it, have not regarded as of high importance, and worthy to be embraced in an instrument which, for a time, at least, is to control alike the government and the governed, and to form a standard by which is to be measured the power which can be exercised as well by the delegate as by the sovereign people themselves. If directions are given respecting the times or modes of proceeding in which a power should be exercised there is at least a strong presumption that the people designed it should be exercised in that time and mode only; and we impute to the people a want of due appreciation of the purpose and proper province of such an instrument, when we infer that such directions are given to any other end. Especially when, as has been already said, it is but fair to presume that the people in their constitution have expressed themselves in careful and measured terms, corresponding with the immense importance of the power delegated, and with a view to leave as little as possible to implication." Cooley's Const. Lim. [6 Ed.], pp. 93 and 94; *Ibid.*, pp. 78 and 79; *Commonwealth v. Williams*, 79 Ky. 42; *Page v. Allen*, 58 Pa. St. 338; *People ex rel. v. Draper*, 15 N. Y. 532.

The idea and purpose of maintaining the secrecy of the ballot in elections by the people is sharply accentuated, and, indeed, demonstrated, by another section of the constitution in the same article, to wit, section 6, which declares that "all elections by persons in a representative capacity shall be *viva voce.*"

While election officers are permitted to testify as to the individual ballot of any voter in a judicial proceeding, the secrecy of the ballot itself is protected, save in the one proceeding named in the constitution. Nor is it difficult to assign a reason for this discrimination. Bearing in mind the policy of the people in adopting the system, the convention might well determine, as it did, that the courts should hear the evidence of the election officer, limited by appropriate rules of evidence, but it was evident that, if once the ballot box was invaded by *one court*, then, upon the flimsiest pretexts, these boxes could be opened in all cases, *and in all courts*, and their secrets spread before the curious public, and the whole scheme of a secret ballot would become utterly discredited. The convention and the people understood all this at the time, and they must have considered that, while it was possible to commit frauds in elections, the legislature, by wise and stringent election laws, could prevent or greatly mitigate these wrongs, but at all events the mischiefs to ensue from fraudulent voting were not thought sufficient to outweigh the benefit of a secret ballot, and hence the constitution was written as it is.

The considerations which induced the states of this union to adopt the secret ballot not only continue to exist, but others have been added. The timid voter today is not only protected from his opulent employer but from the aggressive spirit of his own fellows and the domination of brotherhoods and societies. It is a most significant fact that in the reports of adjudicated

cases in the courts of last resort of this country no case has been, nor can be, found where the courts have asserted the power to open a ballot box and use the ballots as evidence, save in contested elections.

The legislature of this state, in 1883, passed an act providing for counting ballots in contested elections. Laws of 1883, p. 91. By that enactment the policy of preserving the secrecy of the ballot is made manifest. The act provides that the county clerk shall exclude all persons from his office, except the contestant and contestee and their respective attorneys, and these are required to be sworn not to disclose any fact discovered from such ballots, except such as may be contained in the clerk's certificate. After the parties have examined the ballots the clerk is required to make a certificate under his hand and seal of all the facts, which either of said parties may require, which may appear from the ballot affecting or relating to the election *for the office in contest.* By the next section the clerk is then required to again securely seal up the ballots as they were, and preserve and *destroy them as provided by law in the same manner as if they had never been opened.* Acts of 1883, p. 91; R. S. 1889, secs. 4725, 4726. The certificate of the clerk made under the provisions of this act shall be *prima facie* evidence of the facts stated therein; but the persons present at the examination of the ballots may be heard as witnesses to contradict the certificate.

It is clearly apparent that the legislature, by the foregoing provisions, scrupulously provided against the production of the ballots themselves in evidence, and substituted secondary evidence of their contents in lieu thereof. This act of 1883 negatives any presumption that the ballots were to be subject to the command of any court or to be used as primary evidence therein by the express provision that the certificate of the clerk

should be *prima facie* evidence of the facts, and limiting the rebuttal to those witnesses who had been permitted to be present at the recount.

But this is not all. If the policy of the law had favored or permitted the production of these ballots as evidence, most certainly it would be contrary to every principle of justice to require evidence deemed essential to a recovery in any action to be destroyed without reference to the pendency of the action or the rights of the parties; and yet the act of 1883 requires the county clerk or recorder of voters *to destroy the ballots at the end of a year from the election.* On no other principle can the destruction of the ballots be justified, than that they were preserved in the first instance for the *sole purpose* of permitting the result of the canvass to be verified or disproved and that one year would be accorded for that purpose, and after that they should be destroyed. Surely the law can not be so inconsistent with itself as to authorize a judicial inquiry upon a particular subject and, at the same time, *industriously* provide for the concealment of material evidence which would establish the fact sought after.

But it is asked how can this conclusion be reconciled with the laws enacted to punish fraud by judges and clerks of election, as provided by section 3748, Revised Statutes, 1889, and with the general powers of a grand jury. We answer that it is upon precisely the same principle which prevents the disclosure of confidential and privileged communications. There are doubtless many instances in which the evidence of a husband would convict the wife, or the wife's would settle the guilt of her husband, and yet the law, in its wisdom, seals his or her mouth. Likewise the testimony of attorney, priest or physician might establish beyond all doubt the guilt of the client, penitent or patient in a given case, and yet it is excluded. These exceptions are based upon

the peace of society, but, in the estimation of the people of Missouri, good government itself is dependent upon the absolute inviolability of the ballot, except in a "contested election," and then only under such safeguards as would insure both the secrecy of the ballot and absolute verification of the election as held by the people. These two considerations governed the convention in framing, and the people in adopting, the constitution.

Confirmatory of our construction, that the ballots are preserved solely for evidence in contested elections, it is to be observed that election contests are intended to be summary, and hence a year was deemed ample time within which a recount should be made.

Now, it is universally agreed that the admission of the ballots in evidence depends upon the primary proof that they have remained in the same condition in which they were cast; that they have remained in the custody of the officer charged with their keeping and that no opportunity has been afforded whereby they might have been changed or tampered with. McCrary on Elections [2 Ed.], sec. 277; *Coglan v. Beard*, 67 Cal. 303; *Ex parte Brown*, 97 Cal. 83. As well stated by the petitioner in his return to the court, if the ballot boxes may be opened and the ballots themselves handled and examined by twelve grand jurors, the *prima facie* case for the parties to the contested election is destroyed or at least rendered exceedingly difficult to establish; and we may add that, if one grand jury may demand the ballots, all grand juries, and all examining magistrates, and all courts, may do so and thus the evident and sole purpose of preserving the ballots be entirely frustrated. So long as the recorder of voters or county clerk permits no one but the contesting candidates to inspect the boxes under the safeguards of the law, they have every assurance and presumption that they have not

been tampered with; but if they must, under this sweeping order, be turned over to a grand jury, for twelve men to handle and scan, great difficulty must result in making even the preliminary proof necessary to admit them in the further steps of the contests.

There is another consideration mentioned by the supreme court of Michigan which deserves noting. Says Judge CAMPBELL, in *People ex rel. v. Cicott*, 16 Mich. *loc. cit.* 302: "When we consider that for very many years legislation has been often modified for the very purpose of suppressing illegal voting, and when we know that hundreds of elections must have been turned by the ballots of unqualified voters, *the absence of any body of decisions upon the subject is very strong proof that inquiry into private ballots is felt to be a violation of the constitutional safeguard on which we pride ourselves, as* distinguishing our elections from those which we are wont to regard as conducted on unsafe principles."

Again, it is perfectly evident that the county clerks and recorders of voters can not comply with the law if they can be compelled by the courts to permit these boxes to be opened by any and every court that may demand them, and, on the other hand, if the grand jury or a committing magistrate may take charge of the ballot boxes and discover how each elector votes, and the judges or clerks are indicted but not tried before the expiration of the year, must the clerk or recorder of voters *again violate the law* and refuse to destroy the ballots, or if he does destroy them in obedience to the statute will he be in contempt of the court?

The conclusion, it seems to us, is inevitable that, however necessary it is to punish crime, the courts must be careful that they do not override the organic and statute laws of the state.

The case of *Lee v. Birrell*, 3 Camp. 337, is cited ·to show that there is an implied exception of the evidence to be given in a court of justice where a witness had taken an oath of secrecy. The meagre report of ·that case does not disclose that the oath of secrecy was even lawful. If it was a mere voluntary oath not to ·disclose a matter not otherwise privileged as it would .seem to have been, then no doubt Lord ELLENBOROUGH expressed the correct rule. But here the official oath ·of the recorder of voters is in harmony with the organic and statute law.

We are cited to the decision in *Ex parte Brown*, 72 Mo. 83, in which the agent of a telegraph company was .subpœnaed to produce certain private dispatches and it was held they were not privileged communications, but the reasoning of that case only strengthens the view that, where the paper sought is not only privileged but that privilege the result of the enlightened opinion ·of the people as expressed in their fundamental laws, it will be sustained.

There is no question of the cogency of the argument which urges the importance of punishing election ·officers for making false returns. We recognize its full force, and yet we are not prepared to agree that, because now and then an official violates his oath of office and escapes punishment through some technical rule of evidence, our system of government is a failure. We deem it far more essential to maintain the integrity of the constitution than to punish any one man, or set of men. If a criminal can not be punished save by the ·infringement of the constitution, then he should go .acquit, and the people can amend their constitution .and laws, if they see fit.

The tyranny of giant corporations and concentrated wealth on the one hand and the combinations of labor-·ers and workmen upon the other, to say nothing of the

influence of parties, make it exceedingly difficult for any, save a bold and courageous man, to vote an open ticket, and the courts should be exceedingly careful, therefore, in discrediting the secret ballot. The people, through their representatives, can prescribe more drastic remedies for wrongs that experience has demonstrated will occur under any system of laws, but the remedy is not in courts disregarding the constitution, and laws made to perpetuate it.

Accordingly, we hold that the petitioner properly refused to open the ballot boxes, and the order of the criminal court was in excess of its jurisdiction and the petitioner is discharged from further custody of the marshal. MACFARLANE, BURGESS and SHERWOOD, JJ., concur; BARCLAY, J., concurs in discharging petitioner for reasons stated in his separate opinion. BRACE, C. J., and ROBINSON, J., dissent.

BARCLAY, J., (*concurring*). The record in this case shows that, before the order was made by the criminal court for production of ballots cast at the last November election, the recorder of voters, under direction of the circuit court, had entered upon an examination or recount of the same ballots, and that that examination was not finished. Such examination is authorized by the constitution and laws of this state, in election contests. Const. 1875, art. 8, sec. 3; R. S. 1889, secs. 4721–4723; *State ex rel. v. Slover* (1895), 126 Mo. 652 (29 S. W. Rep. 718). While such an examination is in progress, under the order of a competent court, it seems to me that the recorder of voters should not be compelled to immediately produce before some other court the ballots required to complete that examination.

There is no suggestion that the examination in the contested election case has been unreasonably prolonged. Nor is there an intimation of any abuse of the

circuit court's order to avoid compliance with the order of the criminal court. There is nothing before us showing any bad faith on the recorder's part in reference to the execution of the order in the election case. The short time which has elapsed since the beginning of the contest excludes any such inference.

Under our positive law, the sufficiency of the facts upon which a court is proceeding to punish for contempt may be inquired into by means of the writ of *habeas corpus.* R. S. 1889, sec. 5378. Hence it is proper for us to consider whether the facts before the judge of the criminal court warranted the punishment of imprisonment for contempt, which he imposed upon relator. In my opinion they did not warrant such imprisonment.

The relator should be discharged from custody.

It seems to me unnecessary, in the circumstances, to go into the general question of the secrecy of the ballot, or to ascertain the extent of the immunity of ballot boxes, or their contents, from examination in judicial proceedings.