## MONTGOMERY v. DORMER, Appellant.

In Banc, March 23, 1904.

1. **ELECTIONS: Terms of Court: Jurisdiction: Notice to Adjourned Term.** The circuit court, in session in regular term on November 6th, on that day adjourned to an adjourned term to be begun on December 15th, the next regular term being fixed to begin in January, and within twenty days after the election on November 4th, the contestant served the contestee with a notice that he would contest his election at this adjourned term, under a statute which requires an election contest to "be determined at the first term of such court that shall be held fifteen days after the official counting of the votes;" and on December 13th the contestee served on contestant a counter notice of contest, and appeared in court at the adjourned session, and agreed that the case might be continued till the January term. *Held,* that the adjourned term was "the first term held fifteen days after the official count" within the meaning of the statute, and the court had jurisdiction of the case at that term.

2. ———: **Best Evidence: Meaning.** The rule of law which demands the best evidence of the fact to be proven is qualified to mean the best evidence available to the party producing it.

3. ———: ———: **Ballots.** The court has no authority under the statute to order the county clerk to open the ballots and ascertain how certain persons had voted and report the same to the court, nor to require him to bring the ballots into court for ex-

posure. The testimony of election judges as to how those persons voted and how their votes were counted can not, therefore, be excluded on the ground that the ballots themselves were the best evidence.

4. ———: **Secrecy: Disclosing Vote.** Our Constitution and statute which forbid election officers "to disclose how any voter shall have voted" refer to a voter who had the right to vote; they do not refer to one who has voted in violation of law. For instance, they do not prevent judges of election from testifying that thirteen persons who had not resided in the State or the county or township for the length of time required by statute, had voted for a certain candidate and that their votes were counted for him. An illegal voter has no right to have the secrecy of his vote preserved.

5. ———: ———: ———: **By Voter.** Whether the court can compel or permit a legal voter, whose vote was cast but not counted in the return, to testify how his vote was cast, is discussed, but not decided in this case, because the decision of that point is not necessary to a proper disposition of the case.

Appeal from Sullivan Circuit Court.—*Hon. E. M. Harber*, Special Judge.

Affirmed.

*Calfee & Eubanks* and *Higbee & Mills* for appellant.

(1) The court erred in permitting voters and judges of election to identify voters and their ballots, and to testify whose names appeared on such ballots for the office in contest. The judges have no right to know or disclose for whom any voter voted. R. S. 1899, secs. 6995 and 7114. Under section 3, article 8, of our Constitution a record is made which identifies every voter and his ballot, and secures both the secrecy of the ballot and absolute verification. This was intended not only to provide the means for detecting illegal votes and frauds in elections, but also to prevent frauds and perjuries in cases of contests. The evidence shows that all the ballots in controversy were preserved. This provision of our Constitution is exclusive of every other

means of identifying the voter and his ballot. The ballot is what counts, and is the best and only evidence of how the voter voted. Ex parte Arnold, 128 Mo. 256; Lankford v. Gebhart, 130 Mo. 636, approved in State ex rel. v. Spencer, 164 Mo. 41; Windes v. Nelson, 159 Mo. 68; State ex rel. v. Sutton, 3 Mo. App. 408; Donnell v. Lee, 73 S. W. 1004; Major v. Barker, 35 S. W. 544. (2) The General Assembly shall by general law designate the court or judge by whom the several election contests shall be tried, and regulate the manner of trial and all matters incident thereto. Sec. 9, art. 8, Const. Sections 7044 to 7049, have been enacted under this mandate of our Constitution; they regulate the procedure. The ballots are sacredly preserved for evidence in such cases; the procedure so authorized is exclusive and the ballots can be counted and the result of the election verified in no other manner. If these sections do not in their terms permit the court to hear parol testimony to identify and prove the contents of ballots, then such evidence is excluded. There is no law for proceeding outside of these sections. The court erred in permitting voters and judges of election to testify how any voter voted. State ex rel. v. Lobsinger, 7 Mo. App. 106; Ex parte Arnold, 128 Mo. 263; State ex rel. v. Oliver, 163 Mo. 693; State ex rel. v. Spencer, 166 Mo. 271; Nash v. Craig, 134 Mo. 361. (3) The court has no jurisdiction of the subject-matter of this proceeding. The notice of contest was not made returnable to the January term of the Sullivan Circuit Court, which was the first term held fifteen days after the official counting of the votes and service of notice of contest. It is such first term that has jurisdiction of the subject-matter of this contest. Wilson v. Lucas, 43 Mo. 290; Higbee v. Ellison, 92 Mo. 13. The notice was made returnable on December 15th, when the regular October term was in session. That term began before the election. Fannon v. Plumer, 30 Mo. App. 25; State ex rel. v. Railroad, 101 Mo. 150; Aull v. St.

Louis Trust Co., 149 Mo. 14; Kansas City v. Ford, 99 Mo. 91; State ex rel. v. Spencer, 166 Mo. 279.

*Wattenbarger & Bingham, John W. Clapp* and *Childers Bros.* for respondent.

(1)   The Constitution and the laws of the State, each qualify the oath of judges of election, and permit said judges to testify how any voter voted, when "required to do so as a witness in a judicial proceeding." Constitution of Missouri, art. 8, sec. 3; R. S. 1899, sec. 6989; Ex parte Arnold, 128 Mo. 265.   (a)  The General Assembly has made no provisions for the return of rejected ballots to the county clerks outside of cities where the law requires registration; and no provision being made for the preservation of such rejected ballots, after the respondent showed by the poll book that a party voted, and from the face of the poll book that his ballot was rejected, it was competent to introduce parol evidence to show for whom the voter voted.   R. S. 1899, secs. 6995, 6996, 7000, 7001; People ex rel. v. Pease, 84 Am. Dec. 242 (27 N. Y. 45).   (b)   The ballot of a voter, when rejected by the judges of election, becomes a mere memorandum of the voter's intention to vote for his choice of candidate to fill the office, and all authorities agree that parol evidence is not to be excluded because of the fact that a documentary memorandum was made of the fact, unless it relates to a contract, etc.   Reynold's Stephens' Evidence, 129; 1 Greenleaf on Ev., sec. 90; Wharton, Evidence, sec. 77; Keene v. Meade, 3 Peters 1; Thomas v. Barnes, 156 Mass. 581. (c)   Oral evidence of  transactions are not to be excluded by the fact that a documentary memorandum of it was made, if such memorandum was not intended to have legal effect as a contract, or other disposition of property.   Hersom v. Henderson, 21 N. H. 224.   (d) When it was shown that the voter had parted with the memorandum of his intentions to vote as the law directs,

and that the judges had rejected it as a ballot, and since there is no provision made by law for the return of such memorandum to the clerks of the county courts, respondent's whole duty, in relation to the best evidence, was performed, and he had the legal right to produce the voter himself to testify for whom he voted, without the aid of the memorandum.   Ex parte Arnold, supra; R. S. 1899, secs. 6995, 6996, 7000, 7001; McCrary on Elec. (3 Ed.), secs. 444, 445; Kneass' Case, 2 Pars. 553; People v. Board of Supervisors, 58 How. Pr. 145; State v. Hilmantel, 23 Wis. 309; Thompson v. Ewing, 1 Brewst. 67; State ex rel. v. Spencer, 164 Mo. 33. Secondary evidence of the contests of a writing not in the control of the party is admissible.   Walker v. Newhouse, 14 Mo. 377; Barton v. Murrain, 27 Mo. 235; Boyce's Trustees v. Mooney, 40 Mo. 105; Denton v. Hill, 5 Tenn. 73; Am. and Eng. Ency. (1 Ed.), title "Evidence," p. 87.   (2)   There being no allegation in the notice of contest that the canvassing board had made any mistake in the count, or that it had committed any fraud in casting up the returns as certified to the county clerk, the trial court had no authority to make an order directing the county clerk to break the seal and recount, or search for rejected ballots.   R. S. 1899, secs. 7044 and 7049; State ex rel. v. Spencer, 164 Mo. 271; People v. VanCleve, 53 Am. Dec. 69 (1 Mich. 362); McCrary on Elec. (3 Ed.), sec. 400.   (a)   It is the legal ballot cast and counted, that the Constitution and the law have agreed to keep from public view, protect and preserve and hold under absolute secrecy, and not the fraudulent ballot, nor the rejected ballot, and if such fraudulent and rejected ballots are returned to the county clerk, that fact does not confer jurisdiction on the trial court to make an order on the clerk to open and recount the legal ballots.   State ex rel. v. Spencer, supra; State ex rel. v. Spencer, 166 Mo. 271.   (b)   An illegal voter is a mere intruder, and has neither right or privilege under the Constitution to have his unlawful

conduct kept a secret, or his fraud condoned under sanction of the law. McCrary on Elections (3 Ed.), sec. 457; State v. Hilmantell, 23 Wis. 422; State v. Olin, 23 Wis. 309. (c) It is only the certified results of the legal ballots cast, counted and returned from the various voting precincts as the law directs, that the canvassing board has to deal with in making the grand total vote given to the candidate, and the canvassing board is not authorized to go further than to examine if the poll books, tally sheets and ballots are properly returned. The result thus found prima facie determines who is elected, but is not conclusive, and the respondent had the legal right to go behind the returns and show that votes were cast for him and not counted, and that illegal votes were cast and counted for appellant. R. S. 1899, sec. 7007; Mayo v. Freeland, 10 Mo. 629; State ex rel. v. Steers, 44 Mo. 223; State ex rel. v. Garesche, 65 Mo. 480; State ex rel. v. Trigg, 72 Mo. 365; State ex rel. v. Elkin, 130 Mo. 108; People v. Van Cleve, 53 Am. Dec. 69.

VALLIANT, J.—This is a contested election case. The parties were rival candidates for the office of clerk of the circuit court of Sullivan county at the election held November 4, 1902. By the official returns of the election officers it appeared that Dormer, the contestee, received 2,252 votes, and Montgomery, the contestant, 2,251. Dormer appearing then to have a majority of one, was awarded the certificate and entered into the office. On November 24, Montgomery served notice on Dormer that at the next term of the circuit court in that county, to be begun and held on the 15th day of December, 1902, he would contest the election. The grounds alleged for the contest were substantially that certain persons named were not legal voters because they had not resided in the State one whole year before the election, and were not residents of the township or precinct in which they voted, yet that they did vote for the contestee and their votes were counted for him; also

Montgomery v. Dormer.

that certain persons named were legal voters and voted at the election for contestant, and the election officers wrongfully refused to count their votes for him; that the contestant received a majority of the legal votes cast and should have been declared elected.

On December 13th the contestee filed in court and served on contestant a counter notice of contest, stating that certain legal ballots cast for him had not been counted and certain illegal ballots cast for contestant had been counted, and that contestee had in fact received the majority of the legal votes.

There are three regular terms of the Sullivan Circuit Court, January, April and October. The October term, 1902, was in session November 6th, and adjourned to December 15th. On December 15th, this cause was by agreement of the parties continued to the January term, 1903, and at that term it was again by agreement continued to the April term, during which term it was tried.

The only evidence adduced at the trial was that on the part of the contestant; it tended to prove, if it was competent evidence, the facts presently mentioned set out in the special findings of the court. Upon the conclusion of the contestant's evidence the contestee asked an instruction in the nature of a demurrer to the evidence, which the court refused, and exception was duly taken. At the request of the contestee the court made a special finding of facts. In this it is found that certain persons named, nine in number, were lawfully entitled to vote and did vote for the contestant, but their votes were not counted; that certain other persons named, thirteen in number, were not lawfully entitled to vote, because they had not resided in the State a year before the election, but that they did vote for the contestee, and their votes were counted for him; that deducting from the contestee's number those thirteen illegal votes that had been counted for him, and adding to the contestant's number those nine legal votes that had been cast

for him but not counted, the contestant had received 2,259 votes while the contestee had received only 2,238; therefore, the contestant had a majority of the votes cast and was entitled to the office. There was a judgment in accordance with this finding, and from that judgment this appeal is taken.

On the trial the contestant called as witnesses certain of the judges of the election, and by them proved that the thirteen persons whom the court found to have been not entitled to vote, but whose votes had been received and counted by the election officers, had voted for the contestee. The contestee objected to this evidence when it was offered on the ground that it was not the best evidence, the ballots themselves being the best, and second, it was unlawful for a judge of an election to disclose how anyone voted. The objection was overruled and the contestee excepted. The contestant produced as witnesses the nine persons whom the court found to have been lawfully entitled to vote and who did vote, but whose votes were afterwards rejected by the judges and not counted, and they testified that they had voted for the contestant. This testimony was also objected to by the contestee on the ground that the ballot was the best evidence, and that it was not lawful to require or permit an elector to disclose the secrecy of his ballot. That objection was also overruled and exception preserved.

Appellant assigns for error the overrulings of the objections to the evidence above mentioned, and also that the court did not have jurisdiction of the case.

I. The last assignment is based on the fact that the original notice served on the contestee was that the contest would be made at the next term of the court to be held on the 15th of December, whereas on that day was to be held only an adjourned session of the October term, the next regular term being in January.

Section 7029, Revised Statutes 1899, confers on the circuit court jurisdiction in cases of contested elections

for county and municipal offices. It provides that no election for such office "shall be contested unless notice of such contest be given to the opposite party within twenty days after the votes shall have been officially counted . . . and the notice shall be served fifteen days before the term of court at which the election shall be contested, by delivering a copy," etc.

. Section 7033 is, "Every court authorized to determine contested elections shall hear and determine the same in a summary manner, without any formal pleading; and the contest shall be determined at the first term of such court that shall be held fifteen days after the official counting of the votes, and service of notice of contest, unless the same shall be continued by consent, or for good cause shown."

The main purpose of the statute as it relates to the notice required, is to compel the contestant to act promptly and give timely notice; the only penalty imposed is upon his failing to give the notice within twenty days after the official counting of the votes; his right to contest depends on his first giving that notice. Higbee v. Ellison, 92 Mo. 13, to which the appellant refers, was a contest for the office of circuit judge; the statute required in such case that the contestant present his petition to the court at the first term next after the election, or else to the judge in vacation; but in that case the contestant had allowed the next regular term of court which was begun after the election, to pass without presenting his petition, and did not afterwards present it to the judge in vacation. It was held that he had suffered his opportunity to pass and his suit was dismissed.

State ex rel. Hancock v. Spencer, 166 Mo. 279, is also relied on by apellant to maintain this assignment, but in that case also the contestant had failed to give the notice within the time required by law; it was held that he had no right to further prosecute his contest.

In the case at bar the notice was given within the

time prescribed, but instead of naming the next regular term of court, the adjourned term, or rather the adjourned session of the October term, was named.

Section 1605 provides that "special or adjourned sessions of any court may be held in pursuance of such proclamation (that is, proclamation by the sheriff) or in continuation of the regular term, when so ordered by the court in term time, the order being entered in its record."

The statute contemplates special terms, adjourned terms, and regular terms. The adjourned term there mentioned, although it is a continuation of the regular term, is not the uninterrupted or unbroken session held in pursuance of an adjournment from day to day, but is a session held after a lapse of a longer period, and is commonly called an adjourned term. That was the kind of term that was held in this instance. The court being in session on November 6th, which was a day of the October term adjourned to December 15th, that was the first term held after the election, and was the term to which the notice called the contestee; at that term he appeared and filed his counter notice, and consented that the cause be continued to the next regular term, which was done. The contestant in giving the notice for that adjourned term acted in conformity to the requirement of the statute as construed by this court in Adcock v. Lecompt, 66 Mo. 40, wherein it was said: "The statute does not say that this term shall be the regular term or special term or adjourned term, but the first term or session of the court whether regular, adjourned or special."

We hold that the court had jurisdiction of the case at the adjourned term.

II. Appellant's second assignment raises a more serious question. The evidence showed that thirteen persons who, on account of their non-residence, were not entitled to vote, had voted. Respondent was permitted over the objection of appellant to prove by the

testimony of men who had been judges at the election that those thirteen persons voted for appellant and that their votes had been counted for him.    Appellant contends that this evidence was illegal on two grounds: first, that it was not the best evidence; second, the election officers are expressly forbidden by law to disclose how any voter shall have voted.

1.    The rule of law that demands of a party the best evidence of a fact to be proven is qualified to mean that the party must produce the best evidence available to him.    [11 Am. and Eng. Ency. Law (2 Ed.), 535.]    Conceding that the ballot itself is the best evidence of its contents, was it available to the contestant or to either party at the trial of this case?

Section 6995, Revised Statutes 1899, prescribes what shall be done with the ballots; "and the ballots, after being counted, shall be sealed up in a package and delivered to the clerk of the county court or corresponding officer in any city not within a county, who shall deposit them in his office, where they shall be safely preserved for twelve months; and the said officer shall not allow the same to be inspected, unless in case of contested elections, or the same become necessary to be used in evidence, and then only on the order of the proper court, or a judge thereof in vacation, under such restrictions for their safekeeping and return as the court or judge making the same may deem necessary; and at the end of twelve months, said officer shall publicly destroy the same by burning without inspection; and no judge or clerk of an election shall disclose the names of the candidates voted for by any voter, and any judge or clerk violating the provisions of this section shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be punished by a fine of one hundred dollars."

In that section no authority is given to take the ballots out of the custody of the county clerk, but authority is given to inspect them under conditions in case

of contested elections, or when necessary to be used in evidence. The conditions under which, in a contested election case, the ballots may be inspected are prescribed in sections 7044-5-6-7-8-9. By the requirements of those sections under conditions therein prescribed an inspection of the ballots may be had in the presence of the clerk, and he may certify the result, his certificate being made prima facie evidence of the facts certified. But the parties are permitted to see only the ballots and the clerk's certificate is to state only what appears from the ballots; he is not permitted to identify the voter who cast any particular ballot. [State ex rel. v. Spencer, 164 Mo. 23.] And "after the examination of the ballots is completed, the clerk shall again securely seal them up as they were and preserve and destroy them as provided by law, in the same manner as if they had not been opened." [Sec. 7048.] There is no other authority given to anyone to examine the ballots that have been cast at an election than that contained in those sections. The court had no authority to order the clerk to open the ballots and ascertain how these thirteen men had voted and report the same to the court, neither did the court have authority to require the clerk to bring the ballots into court for inspection and exposure. Even if the procedure prescribed in those sections just referred to could have been resorted to for the purpose of ascertaining how these men voted, the evidence thereby afforded would have been secondary; it would not have been the ballots themselves in court, but it would have been only the clerk's certificate of their contents. [Ex parte Arnold, 128 Mo. 256.] The best evidence therefore (if the ballots were the best evidence) was not available to the contestant, and, therefore, secondary evidence was admissible.

This brings us to appellant's second ground for contention that the evidence offered was illegal, viz.:

2. The law forbids election officers to disclose how any elector voted.

Our Constitution and our statutes guard with care the secrecy of the ballot.   This was regarded  by the framers of our Constitution as essential to the safety of the voter and the welfare of the State.   Our Constitution and statutes (sec. 3, art. 8, Const.; sec. 6995, R. S. 1899) expressly forbid election officers ''to disclose how any voter shall have voted.''   But the voter there referred to is one who has voted when he had a right to vote, and not one who has voted in violation of the law. There is nothing in our law designed to guard the secrecy of a ballot that has been cast by one who had no right to vote.   The law has no protection for a dishonest or illegal vote.   Therefore, when it is first shown to the satisfaction of the court that a man has voted when he had no right to do so, it may be shown for whom he voted and his vote will be withdrawn from the candidate to whom it was given.   These thirteen men were not entitled to have the secrecy of their illegal ballots preserved.   The election officers did not violate their oath of office when they testified as to how these thirteen men voted and the court committed no error in receiving their evidence.

Deducting those thirteen votes from the contestee's total, leaves the contestant with a majority of twelve votes, which entitles him to the office in question, without adding the nine votes which the court found had been lawfully cast for him, but not counted in the return.

Whether the court had authority to require or permit those nine men to testify, each for himself as to how he voted, we regard as a grave question.   The court treated it as a matter of personal privilege to the witness and allowed him to answer or not as he chose. But whilst it is a matter of personal privilege, yet the voter is not the only party interested; the State has an interest in securing freedom of the ballot.   Besides, if a voter really has a motive for keeping secret his ballot

he should not be put to the test of declining to testify as to how he voted; the effect of so declining would in most cases be as injurious to him personally as to disclose his vote, and knowledge beforehand that he is liable to be put to that test would cause him to vote under restraint. And again, it is not fair between the parties litigant to allow one to bring witnesses who are willing to testify on his side, when the other party can not compel his may-be unwilling witnesses to testify on his side. In such event the court would be at the will of the witnesses and might hear only one side without being able to compel the other side to testify. But as this case is decided before that question is reached we will not answer it.

The judgment is affirmed, and it is ordered that a writ issue out of this court directed to the marshal of the court requiring him to forthwith put the respondent, Edward L. Montgomery, in possession of the office of clerk of the circuit court of Sullivan county.

All concur, except *Robinson, C. J.,* who dissents.

*Calfee & Eubanks* and *Higbee & Mills* for appellant.

*Wattenbarger & Bingham, John W. Clapp* and *Childers Bros.,* for respondent.