[S. F. No. 4638. In Bank.—May 9, 1907.]

THE CITY OF REDONDO BEACH (a Municipal Corporation), Petitioner, v. S. D. BARKLEY, City Clerk of the City of Redondo Beach, Respondent.

MUNICIPAL CORPORATIONS—INCURRING BONDED INDEBTEDNESS—CALLING SPECIAL ELECTION AT ADJOURNED MEETING.—Under section 2 of the act of 1901, page 27, authorizing the incurring of indebtedness by municipal corporations for municipal improvements, which provides that "Whenever the legislative branch of any city, town or municipal corporation shall, by resolution passed by vote of two thirds of all its members, and approved by the executive of said municipality, determine that the public interest or necessity demands the acquisition, construction or completion of any municipal improvement, . . . it may *at any subsequent meeting of such board,* by the vote of two thirds of all its members, and also approved by the said executive, call a special election and submit to the qualified voters . . . the question of incurring a debt for the purpose set forth in said resolution," the ordinance calling the special election may be adopted at an adjournment of the meeting at which the resolution of public interest and necessity was passed.

ID.—APPROVAL BY EXECUTIVE—PRESIDENT OF TRUSTEES IS EXECUTIVE IN CITIES OF SIXTH CLASS.—The requirement of the act of 1901, that the resolution of public interest and necessity and the ordinance calling the special election shall be approved by the "executive of the municipality," is complied with as to cities which have no mayor by the approval of the officer whose duties approximate most closely to those of the mayor or executive in cities which have such officer. In cities of the sixth class that officer is the president of the board of trustees.

APPLICATION for a Writ of Mandate directed to the City Clerk of the City of Redondo Beach.

The facts are stated in the opinion of the court.

Arthur Wright, City Attorney, for Petitioner.

O'Melveny & Stevens, for Respondent.

SLOSS, J.—The city of Redondo Beach, a municipal corporation organized as a city of the sixth class under the Municipal Incorporation Act of March 13, 1883 (Stats. 1883, p. 93), filed its application for a writ of mandate to compel the respondent, its city clerk, to countersign certain bonds which the petitioner proposes to issue. An alternative writ issued, whereupon the respondent demurred to the petition, and the only question is whether the statutory steps precedent to the issuance of the bonds were properly taken.

From the allegations of the petition, which are not disputed, it appears that the board of trustees of the city, at a regular meeting held on January 8, 1906, passed and adopted by the unanimous vote of all its members, a resolution determining that the public interest and necessity demanded the construction by the city of a septic outfall sewer system; that the estimated cost of the said improvement was eighty thousand dollars, and that said cost was too great to be paid out of the ordinary annual income and revenue of the city. This resolution was on the eighth day of January, 1906, approved by the president of the board of trustees, and was duly published. On said eighth day of January, 1906, the board of trustees adjourned the regular meeting to the fifteenth day of January, 1906, and on the latter day to the twenty-ninth day of January, at which time said board, by the unanimous vote of all its members, passed and adopted an ordinance calling a special election to submit to the qualified voters of the city the proposition of incurring a debt of eighty thousand dollars for the purpose of constructing such sewer system. This ordinance was, on the twenty-ninth day of January, 1906, approved by the president of the board of trustees, and was duly published. The special election was held as provided in the ordinance, and more than two thirds of the voters voting at said election voted to authorize the issuance of the bonds. The board of trustees canvassed the returns, and declared that said bond issue had been carried

CLI Cal.—12

by the requisite two-thirds vote. On April 30, 1906, the board
sold the bonds for par. The respondent refuses to comply
with repeated requests to countersign the bonds, and this
proceeding is instituted to compel him to countersign them.

It is conceded that, except in two particulars, the steps
required by the statute for the issuance of such bonds were
properly taken. The objections urged·are these:—

1. The resolution determining that the public interest and
necessity demanded the construction of the sewer system was
passed at a regular meeting of the board held on January 8,
1906, and the ordinance calling the special election was passed
at an adjournment of said meeting on January 29, 1906.·
It is claimed that this was not a compliance with the statute
under which the bonds were to be issued (Stats. 1901, p. 27)
in that said statute requires that the ordinance calling the
special election be passed at a "subsequent meeting" to that
at which the resolution of public interest and necessity was
adopted. Section 2 of the act in question reads, "Whenever
the legislative branch of any city, town or municipal corpora-
tion shall, by resolution passed by vote of two thirds of all its ·
members, and approved by the executive of said municipality,
determine that· the public interest or necessity demands the
acquisition, construction or completion of any municipal im-
provement, . . . the cost of which will be too great to be
paid out of the ordinary annual income and revenue of the
municipality, it may *at any subsequent meeting of such board,*
by the vote of two thirds of all its members, and also approved
by the said executive, call a special election and submit to
the·qualified voters . . . the question of incurring a debt for
the purpose set forth in said resolution." The respondent
argues that an adjourned meeting is not a "subsequent meet-
.ing"; that in contemplation of law the meeting which is held
pursuant. to adjournment is merely a continuation of the
original meeting. It is doubtless true that an adjourned
meeting is, in a sense, a part of the meeting which was ad-
journed, and ·we are cited to cases, not dissimilar to the
present, in which it was so held. Thus, in *Staates* v. *Borough
of Washington,* 44 N. J. L. 605, [43 Am. Rep. 402], an
ordinance was introduced at a meeting of the common council
held on May 2d. The meeting was adjourned to May 9.
1868, at which time the ordinance was passed. It was held

that this was not a compliance with a clause of the charter, providing that no ordinance (of the character of the one in question) "shall be enacted or passed, unless the same shall have been introduced before the common council at a previous meeting." To the same effect is *Flood* v. *Atlantic City,* 63 N. J. L. 530, [42 Atl. 829].

On the other hand, in *Montgomery* v. *Dormer,* 181 Mo. 5, [79 S. W. 913], the contestant in an election contest gave notice that he would contest the election of respondent at the next term of the circuit court, to be held on December 15, 1902. This was an adjourned session of the October term, the next regular term being in January. The notice was held to authorize a hearing at the December term under a statute providing that "the contest shall be determined at the first term of such court that shall be held . . . after service of notice of contest," etc. A similar ruling was made in *Burkelo* v. *County Commissioners,* 38 Minn. 441, [38 N. W. 108], under a statute providing that when a petition for opening a road is presented to the board, the county auditor shall lay it before the board "at their next session thereafter." (See, also, *State* v. *Ross,* (Wash.) 89 Pac. 158.)

In none of these cases was the language of the statute or charter the same as that here involved, and we think the question is one that must be determined by a consideration of the precise terms employed by the legislature, read in the light of the purposes sought to be accomplished. The statute of 1901, authorizing the issuance of bonds for municipal improvements, provides for a determination by the legislative branch of the municipality that the public interest or necessity demands the improvement in question. There is no requirement that this determination shall be published, or that notice of it shall be given in any way. All that is required is that the special election at which the matter is to be submitted to the voters shall be called at "any subsequent meeting of the board." Such subsequent meeting may be a stated or a special meeting, and no particular time is required to intervene. The purpose of the provision seems to be that some period shall elapse between the close of the session which declares the necessity of the meeting and the opening of the session at which the election is called. The council is not to bring up the question, pass on its necessity, and provide for

its submission to the voters at a single meeting. There is to be some period for deliberation between the first step and the second. But, as no particular period is specified, we see no reason why the object of the statute is not accomplished as fully where the meeting is adjourned to a stated time as where it is adjourned *sine die,* and a new meeting called.

These views are confirmed by a consideration of the prior statute providing for the issuance of bonds for municipal improvements. Under that act (Stats. 1889, p. 399), the legislative branch was required to determine the necessity, etc., of the proposed work by ordinance, which was to be published for at least two weeks. After such publication they might "at their next regular meeting after such publication, or at an adjourned meeting," call a special election. The two statutes being *in pari materia,* the former may, under well-known principles, be considered in giving a construction to the latter. We see, then, that the later statute eliminates the provision for a two weeks' publication of the determination of necessity, and, in place of the requirement that the election may be called at the "next regular meeting after such publication or an adjourned meeting," substitutes the simpler and more general phrase "at *any* subsequent meeting." It seems clear that the legislature, in making this change, did not intend to restrict the power which the common council had under the earlier act, but to enlarge it, and that any subsequent meeting, whether regular, special, or adjourned, comes within the terms of the law. (See *Adcock* v. *Lecompt,* 66 Mo. 40.)

2. Section 2 of the act of 1901 provides that both the resolution of necessity and the ordinance calling the special election shall be "approved by the executive" of the municipality. The approval in this instance was by the president of the board of trustees. It is argued that the Municipal Incorporation Act does not make the president of the board of trustees of cities of the sixth class the executive of the municipality and that, as to such cities, no executive is provided. There is no merit in this objection. The statute of 1901 provides for the incurring of bonded indebtedness by "any city, town or municipal corporation incorporated under the laws of this state." It was not intended that any class of cities should be denied this power, and when the statute speaks of

the "executive" of the city, it must, as to cities which have
no mayor be taken to refer to the officer whose duties approxi-
mate most closely to those of the mayor, or "executive," in
cities which have such officer. In cities of the sixth class, the
trustees are to choose one of their number president. (Munici-
pal Incorporation Act, sec. 858; Stats. 1883, p. 268.) Such
president is to preside over meetings of the board, to sign
warrants drawn on the treasurer, written contracts entered
into by the city or town, and conveyances made by the city
or town. (Sec. 875.) It is also provided (sec. 863) that
every ordinance shall be signed by the president of the board
of trustees. These functions correspond to those of the mayor
in the classes of municipal corporations in which a mayor is
elected as such. We are satisfied that the approval of the
resolution by the president of the board met with the require-
ment of the act of 1901.

A peremptory writ of mandate will issue as prayed.

Shaw, J., Angellotti, J., Lorigan, J., McFarland, J., and
Henshaw, J., concurred.