# THE STATE ex rel. EMIL VON STADE v. WILSON A. TAYLOR et al.

### In Banc, May 22, 1909.

1. **ELECTIONS: Opening Ballot Boxes: Frauds at Primary Election: Criminal Prosecution: Under Act of 1903.** If the general primary election of August 4, 1908, was held under the regulation and protection of the laws of this State, there was and is no authority for the opening of the ballot boxes or the inspection of the ballots, in aid of the prosecution of primary election judges of St. Louis for making false and fraudulent returns, except such as might be derived from section 40 of the Act of March 28, 1903, creating a board of commissioners in said city; and if no charge is pending involving an offense under the said Act of 1903, said section 40 affords no authority for an order of court to open the ballot boxes and expose the ballots.

2. ———: ———: ———: ———: **Under Sec. 2116, R. S. 1899.** If the general primary election conducted under the General Primary Election Law of March 18, 1907, was not an "election authorized by law," then Sec. 2116, R. S. 1899, has by its very terms no application to said primary, and an information charging judges of election with feloniously making a false return of the ballots cast at said primary election charged no offense against the laws of this State, and no court having jurisdiction of criminal causes had or has power or authority to order the production of the ballot boxes or to require the ballots cast at said primary to be produced as evidence.

3. ———: ———: **Constitutional Meaning of "Election:" Primary Law Applicable to All Elections.** Even though it be conceded that the word "election" as used in the Constitution does not apply to primary elections for the purpose of nominating party candidates for public office, the Legislature had power, as it did, to provide that the statutes in force in relation to holding elections, counting the ballots, making returns thereof and other kindred subjects should apply to all primary elections held under the General Primary Act of March 18, 1907; and when it did that it provided for the secrecy of the ballot just

as the Constitution had already provided for other elections; and Sec. 2116, R. S. 1899, is applicable to frauds by judges and clerks of a primary election, and when they are prosecuted under that section no court has authority to open the ballot boxes and inspect the 'ballots in aid of the prosecution.

4. ——: ——: **For What Purposes.** The Constitution permits ballot boxes to be opened and ballots to be inspected only in cases of contested elections; and if it is desired to open the boxes or inspect the ballots in aid of a prosecution for frauds committed by election judges and clerks in making false and fraudulent returns, it can be done only by amending the Constitution itself.

## Prohibition.

PROVISIONAL WRIT MADE PERMANENT.

*C. Orrick Bishop* and *Hugh C. Brady* for relator.,

(1) If the general primary conducted on August 4, 1908, under the Primary Act of 1907, was an election within the meaning of the Constitution, then certainly the constitutional prohibition against the opening of the ballot boxes and the disclosure of their contents effectually bars the respondent from enforcing his subpoena *duces tecum* and the commissioners from obeying it. Ex parte Arnold, 128 Mo. 256; State ex rel. v. Spencer, 164 Mo. 23. (2) The Act of 1907 intends and undertakes to place the primary provided for it upon the same plane and footing as an election for officers of the government. Sec. 32, Laws 1907, p. 32. The Legislature undertook to place (and did place, as far as the act could do so) the primary in the same category as an election. (3) The State, in the information against relator, charges him as a judge of election; prosecutes him under a section prescribing an offense and punishment under the election laws of the State; seeks to convict him as a felon offending against a statute regulating and protecting elections; and yet the Attorney-General and the circuit attorney contend that the primary is not an election.

(4) The respondent Taylor, acting merely and solely as an examining magistrate, seeks to justify his order for the subpoena *duces tecum* under the provisions of section 40 of the Act of 1903 (Laws 1903, p. 190), regarding elections in cities having 300,000 inhabitants, viz.: That the Election Commissioners shall keep the ballot boxes for twelve months, "not opening or inspecting them, nor allowing any one else to do so, except under order of court in case of contested elections, or when it shall be necessary to produce them at the trial of any offense committed under this article." 1. The article in question, the Act of 1903, does not designate nor define any offense under it. 2. The Act of 1895 (Extra Session 1895, p. 5), providing for elections in cities having over 100,000 inhabitants, does designate and define a large number of offenses, and further provides (sec. 54, p. 31), as in the Act of 1903, supra, that the Election Commissioners shall securely keep the ballots for twelve months, "not opening or inspecting them themselves, nor allowing any one else to do so, except upon order of court in case of contested elections, or when it shall be necessary to produce them at the trial of any offense committed under this act." 3. But the Constitution provides (Art. 8, sec. 3), that "in all cases of contested elections the ballots cast may be counted, compared with the list of voters and examined under such safeguards and regulations as may be prescribed by law." And it is held by this court that the only exception to the absolute and complete secrecy of the ballot is in the case of contested elections, when it is permissible to count the ballots and compare them with the list of voters, etc. State ex rel. v. Spencer, 164 Mo. 33. The provision is as binding on the State itself as on any person, and the State has no right to have the ballots opened in order to obtain evidence to convict illegal voters. State ex rel. v. Francis, 88 Mo. 557; Montgomery v. Dormer, 181 Mo. 17; Windes

v. Nelson, 159 Mo. 51. In view of the Constitution, article 8, section 3, this section cannot be held to authorize a criminal court of record to compel the production of the ballot boxes before the grand jury sitting to investigate election frauds. Ex parte Arnold, 128 Mo. 256. Hence, the provision of section 40 of the Act of 1903, supra, regarding the production of the ballot boxes "when it shall be necessary to produce them at the trial of any offense," etc., is wholly unwarranted by the Constitution and contrary to the express provisions of the Constitution, and void.

*Herbert S. Hadley,* Attorney-General, *Lehman & Lehman, David A. Ball, Arthur N. Sager* and *Loomis C. Johnson* for respondents.

(1) (a) The Primary Act of 1907 does not provide for an election within the meaning of the term as used in the Constitution. (b) The term "any election," as used in section 3, article 8, Constitution of Missouri, does not contemplate, or include primary or nominating conventions. (2) Therefore, admitting that the Legislature had full power to pass the Act of 1907, the same not coming within the purview of the provisions of section 3, article 8, Constitution of Missouri, the constitutional provision relating to the secrecy of the ballot, does not and cannot apply to the primary act. (3) The granting of the order and the use of the ballots as contemplated does not infringe upon the constitutional provision, and will violate neither law nor precedent. Dooley v. Jackson, 104 Mo. App. 30. (4) As used in the Constitution, the word "election" therein has a restricted meaning; it refers to the election of individuals to public office, and not the mere nomination of candidates for such offices, to be subsequently voted for. Com. v. Wells, 110 Pa. St. 463; People v. Cavanaugh, 112 Cal. 674; Com. v. Helm, 9 Ky. Law Rep. 532; Woodruff v. State,

52 Atl. 294, 68 N. J. Law 89; State v. Johnson, 87 Minn. 221; Seaman v. Baughman, 82 Iowa 216; Reid v. Garsuch, 67 N. J. Law 396; State ex rel. v. Crook, 126 Ala. 600; Grahan v. Grenable, 67 Tex. 62; State v. Waxahookie, 81 Tex. 626. (5) The effect of section 32 of the primary law is as if the provisions of the general election law therein referred to were contained in appropriate terms in the primary law. The section in question belongs to the class of laws known as "reference laws." They are enacted in the form adopted in section 32 for the purpose of convenience, and to avoid encumbering the books with needless repetitions. 26 Am. and Eng. Ency. Law, 711, n. 4; State v. Gerger, 65 Mo. 306; Ex parte Allen, 671 Mo. 534; Ensworth v. Curd, 68 Mo. 282; Geer v. Commes, 97 Fed. 435; Chenango Bridge Co. v. Bridge Co., 3 Wall. 51; Phoenix Assn. Co. v. Fire Dept., 42 L. R. A. 468. (6) Under the past decisions of the courts of this State and the construction of section 3, article 8 of the Constitution, we admit the impossibility of compelling the production in court in a criminal prosecution for violation of the election laws of the ballots cast at an election, but with profound respect we ask permission to question the soundness of this doctrine. In the cases last above cited, it has been held that the secrecy of the ballot is of greater importance than its sanctity. With all due regard for the able and learned opinions of this court, we believe this doctrine should not endure. It does not, we believe, express the intention of the framers of the Constitution. They provided for the secrecy of the ballot in order to prevent the corruption of the suffrage by intimidation, but they did not intend to leave the suffrage exposed to corruption by any other means whatsoever. The sanctity of the ballot, in the fullest sense of the term, the expression of the public opinion, unconstrained by duress of any kind and unperverted by fraud in any form, is what they proposed to secure, and as we

think the debates will show, they did secure. It was the corruption of the ballot, and not the specific corruption by intimidation, that they aimed at. They did not balance fraud against duress and declare the latter was more to be feared than the former; they made no choice of evils, but condemned both. Massey Case, 45 Fed. 629.

GANTT, J.—On the 22d day of August, 1908, Victor H. Falkenhainer, assistant prosecuting attorney of the St. Louis Court of Criminal Correction, filed with the clerk of the St. Louis Court of Criminal Correction, an information signed and verified by himself, wherein he charged that the relator and others were on the 4th day of August, 1908, the duly appointed and qualified judges, at the second election precinct of the third ward, at number 1622 North Broadway, in the city of St. Louis, of the general primary election had and held on that day pursuant to the laws of this State for the choice and nomination of candidates for the offices of Governor, Lieutenant Governor, Secretary of State, State Auditor, Attorney-General, judge of the Supreme Court and other State officers, to be filled at the general election in November, 1908, and that on said 4th day of August, 1908, relator and said other persons selected and appointed as judges for said precinct in said city, appeared at said precinct polling place, number 1622 North Broadway, and were duly sworn and entered upon their several duties as judges as aforesaid and acted as such in the conduct of said primary for said election precinct and that relator, E. Von Stade, and the said other judges, unlawfully and fraudulently did wrongfully count the ballots cast at said general primary in the said second election precinct of the third ward on said 4th day of August, 1908, and did feloniously and fraudulently make a false return of the ballots then and there cast at said primary by then and

there failing and refusing to count the ballots cast at said general primary on said date for certain candidates for the nomination of Governor of Missouri on the Democratic ticket, etc. The information then specifically named certain electors whose ballots were wrongfully and falsely counted and returned by relator and his associate judges as not having been cast for the candidates for whom they were voted. Warrants were issued by the clerk of the St. Louis Court of Criminal Correction upon said information under which relator and his codefendants were arrested; each defendant gave bond before the judge of the said court and were all arraigned and entered a plea of not guilty and the cause was set for hearing before Honorable Wilson A. Taylor, the judge of the said court, as an examining magistrate.

On the 27th of August, 1908, an application was filed with the clerk of the said court, on behalf of the State, signed by the said assistant prosecuting attorney, and the circuit attorney of the city of St. Louis, in which it was stated, in substance, that, "The following evidence, documents and papers will become and be material evidence at said hearing and trial, to-wit: First, the ballot box and key to the same used in the second precinct of the third ward at the primary held August 4, 1908, and the contents thereof, to-wit, the ballots therein cast at said primary, the said ballot box and key being the same delivered to the defendants as officers of election in said precinct and ward by the Board of Election Commissioners, and to the said board returned by the defendants on the night of August 4, 1908, with the ballots cast or alleged to have been cast at said primary on said date. Second, The final returns and statements made by the judges and clerks of said election precinct showing the result of the count of the ballots made by said judges and clerks as the same were cast or were presumed to be cast at the primary held in said precinct

on the 4th day of August, 1908.   That James L. Car-
lisle, Benjamin Schnurmacher and Thomas K. Skinker
comprise the Board of Election Commissioners of the
city of St. Louis, and John P. Ellsperman is the secre-
tary of said Board of Election Commissioners; that
the aforesaid evidence, documents and papers are in
the official care, custody and possession of said Board
of Election Commissioners and said Ellsperman, sec-
retary as aforesaid, and that the facts to be proven
by said evidence, documents and papers cannot be
established by any other evidence, and said evidence,
documents and papers are material and necessary as
evidence in this cause.   That the purpose for which
this evidence is material and necessary is to establish
the correctness or falsity of the count and return made
by the defendants herein of the ballots cast at said
primary in said precinct, etc., and that the same is
sought for this purpose and no other; that it is the
desire of the State to offer in evidence the face of
the ballots found in said box, and not any of the
indorsements which may be found on the back of the
same.'' And the assistant attorney prayed for a sub-
poena *duces tecum* commanding the election commis-
sioners to produce the said ballot box, key and ballots
before Judge Taylor.   On the 28th of August, 1908,
the court granted the application and the subpoena
*duces tecum* was ordered issued, and the cause was
continued until September 4, 1908.   The relator and
his codefendants filed their motion in said court to
revoke the said order and to recall the said subpoena
on the ground that the judge had no power, author-
ity or jurisdiction to require the production before
him of the said ballot box, key and ballots, which mo-
tion was overruled.

   Thereupon on the 3d day of September, 1908, the
relator, Emil Von Stade, presented his application
to the Chief Justice of this court, in vacation, for a

220 Sup—40

writ of prohibition directed to Judge Taylor and the election commissioners, prohibiting them from causing said ballot box to be opened and the ballots therein from being exposed and from the further enforcing of the said subpoena *duces tecum,* and thereupon a provisional writ of prohibition was issued commanding the said judge of the court of criminal correction and the election commissioners to desist and refrain from exercising any jurisdiction or authority to cause said box to be opened and the ballots therein exposed and commanded them to be and appear before this court, In Banc, on the 13th of October, 1908, to show cause why a final writ of prohibition should not be entered against them as prayed in the application, and that in the meantime no further action in enforcing said subpoena *duces tecum* should be had.

At the return day of the writ the election commissioners made return that they had complied with the order made on the 3d day of September, 1908, and had refrained from taking or permitting the ballot box to be opened and the contents exposed.

Judge Taylor made a separate return, in which he stated that he had in all respects obeyed the writ of September 3, 1908, and had refrained from exercising any jurisdiction to cause said ballot box to be opened and the ballots therein exposed. For a further return he stated that the application for the issuance of the court's writ herein did not set forth facts showing that he as judge of the St. Louis Court of Criminal Correction had exceeded his lawful jurisdiction in making the order for the issuance of the subpoena *duces tecum* commanding the board of election commissioners to appear with the ballot box and key used in the said election precinct at the primary on August 4, 1908, and the contents thereof, the votes or ballots cast at said primary; and that he had full authority and jurisdiction to make the order for the issuance of the said subpoena *duces tecum* to the board of elec-

tion commissioners requiring them to bring said ballot box and to produce in evidence the ballots contained therein and purporting to have been cast at said primary. For a further return Judge Taylor stated that in the action pending before him as judge of the said court of criminal correction in which the judges and clerks of the said precinct and ward were charged with frauds and felonies in the conduct of said primary of August 4, 1908, the ballots contained in the ballot box constituted the best evidence of whether the votes cast at said primary were counted and canvassed as cast, and whether truthful return of the result of said primary in said ward and precinct was made by said judges and clerks, and it was material in said prosecution to determine whether said judges and clerks had truly and honestly counted the ballots in said box and had made truthful and honest return thereof, and said question could be conclusively determined by the recount of the ballots in said box and comparison thereof with the returns of the primary in said ward and precinct made by the said judges and clerks. And finally that the petition for the writ of prohibition therein does not state facts which would authorize this court to make permanent the temporary writ which was ordered against the defendant on the 3d day of September, 1908. And he prayed to be dismissed with his costs.

Upon these returns the relator moves the court for judgments upon the pleadings and to make prohibition permanent for the reason that the returns do not show any cause why the same should not be made permanent, and because upon the face of the pleadings it appears that the preliminary rule was properly granted and should be made permanent.

If the general primary election of August 4, 1908, was held under the regulation and protection of the laws of this State in force as to elections, there was and is no authority for the opening of the ballot boxes

or the inspection of the ballots cast at said primary election, except such as might be derived from section 40 of the Act of March 28, 1903, entitled, "An Act to create a Board of Election Commissioners in cities now having or which may hereafter have three hundred thousand inhabitants; to provide for the appointment of the same; to define the duties of such board," etc., Laws of Missouri 1903, pages 170 to 190. There was no charge pending before Judge Taylor involving any offense under the said Act of 1903, and hence said section 40 affords no authority for the order to open the ballot boxes and expose the ballots. The felony, with which the relator and his associate judges were and are charged in the information filed, is that denounced by section 2116, Revised Statutes 1899, to-wit: Feloniously, wilfully, knowingly, falsely and fraudulently making a false and wrongful return of the ballots cast at said second election precinct of the third ward in the city of St. Louis at said general primary on the 4th day of August, 1908. If the said primary conducted as it was under the Act of the General Assembly of Missouri approved March 18, 1907, was not an "election authorized by law," said section 2116, Revised Statutes 1899, ex vi termini, has no application to said primary, and the information charged no offense against the laws of this State, and neither the court of criminal correction nor the judge thereof, nor any other court of this State having jurisdiction of criminal causes, had or has any power or authority to order the production of the ballot boxes, or to require the ballots cast at said primary to be produced as evidence, as there was nothing for the examining magistrate to try and no offense which the said ballots could by any possibility establish.

The learned counsel for Judge Taylor insist that the primary election of August 4, 1908, was not an election within the meaning of the Constitution and that therefore the constitutional provision for the

secrecy of the ballots in an election does not apply, but the assistant prosecuting attorney of the St. Louis Court of Criminal Correction evidently held a different view when he filed the information against the relator and his associate judges of the said election at said precinct, because his information charges an offense, if at all, under section 2116, Revised Statutes 1899, which by its terms applies only to an "election authorized by law," and Judge Taylor when he granted the subpoena *duces tecum* evidently took the same view, because if the primary of August 4, 1908, was not an "election authorized by law," as already said, no offense against the laws of this State had been committed, and that section could have afforded no basis for the information.

Section 3, article 8, of the Constitution of Missouri, 1875, provides that "All elections by the people shall be by ballot; every ballot voted shall be numbered in the order in which it shall be received, and the number recorded by the election officers on the list of voters, opposite the name of the voter who presents the ballot. The election officers shall be sworn or affirmed not to disclose how any voter shall have voted, unless required to do so as witnesses in a judicial proceeding: Provided, that in all cases of contested elections the ballots cast may be counted, compared with the list of voters, and examined under such safeguards and regulations as may be prescribed by law."

In Ex parte Arnold, 128 Mo. 256, the criminal court of Jackson county ordered that the recorder of voters within and for the city of Kansas City, Missouri, should produce the ballot boxes in various precincts of said city before the grand jury, and that he should allow the grand jurors to inspect the said ballots in the presence of the said recorder. That order was served upon the recorder of voters, and under the advice of competent counsel he declined to obey said order, because he was advised that it was a violation of his

official oath and duty, and because neither the said court nor any other tribunal in this State could lawfully require him to permit said ballot boxes to be opened and the ballots therein inspected except in a case of contested election, and then only under the regulations and restrictions prescribed by the laws of this State. Upon this return the criminal court adjudged the relator to be in contempt and issued its writ to the marshal of Jackson county to arrest and commit the recorder of voters, and he was arrested and thereupon he sued out a writ of *habeas corpus* to this court. And it was held, in that case, that one imprisoned for the violation of an order or judgment in excess of the jurisdiction of the court rendering it, could be discharged by writ of *habeas corpus*. And it was held further that the criminal court had no authority to compel the production of the ballot boxes before the grand jury for their examination and inspection while investigating election frauds and that section 3 of article 8 of the Constitution of this State limited the right of examination of ballots to election contests.

The counsel for Judge Taylor in support of his order to the election commissioners to produce the ballots for examination on the preliminary hearing of the relator Von Stade under the information filed in the St. Louis Court of Criminal Correction make two contentions: first, that conceding the soundness of the decision of this court in Ex parte Arnold, 128 Mo. 256, and the cases which have since followed and approved that decision, to-wit: State ex rel. v. Spencer, 164 Mo. 23; Montgomery v. Dormer, 181 Mo. 5; and the case which preceded it, State ex rel. v. Francis, 88 Mo. 557, those decisions cannot be held to apply to this case for the reason that the primary of August 4, 1908, was not an *election* within the meaning of the Constitution, and that the word "election" as used in the Constitution refers entirely to the election of in-

dividuals to a public office, and not the mere nomination of candidates for such offices to be subsequently voted for. That the framers of the Constitution referred to the election of individuals to public office and not to mere nomination to office when they inserted section 3 of article 8 in the Constitution, we have no doubt whatever. As said by the St. Louis Court of Appeals in Dooley v. Jackson, 104 Mo. App. l. c. 30, ''The word 'election' frequently occurs in the Constitution of the State. First in section 9, article 2, and article 8 of that instrument is wholly devoted to the subject of elections. But wherever used in the Constitution, it is used in the sense of choosing a person or persons for office by vote, and nowhere in the sense of nominating a candidate for office by a political party. 'Where the word is used in a certain or restricted sense in the Constitution and the Legislature uses the same word without restriction or qualification in an act in respect to the same subject-matter, the word in the statute should receive the same interpretation that the Constitution has given it.' '' [Mayor of Valverde v. Shattuck, 19 Colo. 104 (41 Am. St. 208); Com. v. Kirk, 4 B. Monroe, l. c. 2; State ex rel. v. McGowan, 138 Mo. 187.] But while this is true, it by no means follows that the Legislature of the State did not have the power to prescribe as it did in section 32 of the Act of 1907, that: ''The provisions of the statutes now in force in relation to the holding of elections, . . . the manner of conducting elections, of counting the ballots and making return thereof, and all other kindred subjects, shall apply to all primaries in so far as they are consistent with this act, the intent of this act being to place the primary under the regulation and protection of the laws now in force as to elections.'' [Laws 1907, sec. 32, p. 270.] If there is any meaning to this section at all, it is that there shall be no legal difference between the manner of conducting elections and of count-

ing the ballots and making the returns thereof for State and county and city officers under the statutes of this State, and the primary for nominating candidates as provided by the Primary Act of 1907. Counsel quote at length from the decision of the Court of Appeals in Dooley v. Jackson, 104 Mo. App. 21, to show that the word "election" as used in sections 3430, 3431, R. S. 1899, does not apply to primary elections for the purpose of nominating candidates for public office. But reference to that case and to sections 3430 and 3431 will demonstrate that it is wholly unlike the question under consideration here. Section 3430 provides: "Bets and wagers on any election authorized *by the Constitution* and laws of this State are gaming within the meaning of this chapter;" and section 3431 provides: "Every stakeholder who shall knowingly receive any money or property staked upon any betting declared gaming by the foregoing provisions, shall be liable to the party who placed such money or property in his hands, both before and after the termination of such bet; and the delivery of the money or property to the winner shall be no defense to any action brought by the losing party for the recovery thereof: *Provided,* that no stakeholder shall be liable afterward unless a demand has been made of such stakeholder for the money or property in his possession previous to the expiration of the time agreed upon by the parties for the determination of the bet or wager." After citing these sections the Court of Appeals quotes the various provisions of sections 7081, 7082, 7083, 7088, 7127, 7128, 7130, authorizing the nomination of candidates for office by political parties at primary elections. The court says: "The legislation above referred to makes it plain that primary elections are authorized by the laws of the State. But to constitute the offense of gaming on the result of an election, the election must have been such a one as is mentioned in the statute, that is, it must have

been authorized *by both the Constitution and laws of the State,* and come within the meaning of the term 'election' as used in the statute. At first blush it might seem that an act of the Legislature is authorized by the Constitution if it is a valid act. But a State Legislature, unlike the National Congress, has full legislative power wherever it is not restricted by the Constitution; whereas Congress has power only when it is granted by the Constitution. Hence, the Legislature does not need express constitutional authority to legislate on a subject, but only lack of a constitutional prohibition.'' Hence, although the framers of the Constitution used the words ''elections by the people'' in the sense of choosing a person for office by the votes of electors, and not in the sense of nominating a candidate for any office by a political party, there is nothing in the Constitution which prohibits the Legislature of the State from providing for the conduct of primary elections and placing them under the same safeguards and protection which the Constitution itself throws around elections for office, and this it clearly did in the enactment of section 32 of the Act of 1907 providing for a general primary for the nomination of all candidates for office in this State. And, when it did so, it provided for the secrecy of the ballot just as the Constitution had already provided in section 3 of article 8 of the Constitution. In the absence of a prohibition in the organic law, the Legislature had the plenary power to provide for the secrecy of the ballot in primary elections and needed no express authority in the Constitution to enable it to do so, and hence there is nothing in the case of Dooley v. Jackson *that in any manner militates against* the conclusion that the same regulation and protection of our laws in regard to the secrecy of the ballot were extended over primary elections held under the Act of 1907, and in our opinion section 2116 is applicable to frauds by judges and clerks of such a pri-

mary. [Ex parte Allen, 67 Mo. 534; State ex rel. v. Geiger, 65 Mo. 306.]

If we are right in this conclusion, we are then brought to the insistence of counsel that the decisions of this court in State ex rel. v. Francis, 88 Mo. 557, and Ex parte Arnold, 128 Mo. 256, and State ex rel. v. Spencer, 164 Mo. 23; Windes v. Nelson, 159 Mo. 76; State ex rel. v. Board of Public Schools, 112 Mo. 213; Montgomery v. Dormer, 181 Mo. 5, should all be overruled. The present contention of counsel is by no means new; it was pressed upon the court in State ex rel. v. Francis, supra. In that case this court said: "But it is asked, has the Constitution deprived the State of Missouri of the right to inspect the ballots when she seeks to expel an intruder from office? Shall she not be permitted to have the ballots opened, when necessary to convict illegal voters? The Constitution names one class of cases in which they may be inspected, and, unless the supposed cases belong to that class, the State has no more right than an individual suitor to an inspection of the ballots. She is as much bound by the Constitution as any citizen, and if she has chosen, by her organic law, to tie her hands in this matter, it is not in our power to release her from restrictions she has imposed upon herself." In this case it is asked, can it be maintained for one instant that under such circumstances the makers of the Constitution intended that the secrecy of the ballot was of greater importance than its sancitity? The decision in State ex rel. v. Francis, supra, was rendered nearly a quarter of a century ago, and the interpretation that was then placed upon section 3 of article 8 of the Constitution has been followed on every occasion in which that question has since arisen. During all these intervening years many amendments have been proposed to the Constitution and many have been adopted, but neither the people of this State, nor any member of the General Assembly, with the full knowl-

edge of the interpretation which the Supreme Court has placed upon this provision of the Constitution, have ever proposed to so amend this section as to permit the ballot boxes to be opened and the ballots exposed and examined in any case other than in a contested election, and the same may be said as to the construction put upon this article of the Constitution in Ex parte Arnold, in which practically the same question which is now before us was determined adversely to the present contention of counsel for Judge Taylor. In Ex parte Brown, 97 Cal. l. c. 90, it was said by the Supreme Court of that State through Chief Justice BEATTY: "We are asked by counsel how the declared intention of the Legislature to punish frauds by election officers can be reconciled with an intention to prevent the use of the best means of proving such frauds. It might as well be asked how the plain injunction of the statute that the ballots must be destroyed at the end of one year can be reconciled with the law which authorizes a prosecution to be commenced at any time within three years. Both these questions may be answered in the same way. The different provisions are in neither case absolutely inconsistent, and if it be true that the preservation of the ballots as the law directs is an obstacle to the enforcement of the newly-provided penalties for frauds of election officers, this result flows from the fact that the Legislature, in this instance, as in so many others, failed in revising the old law to coordinate its different parts so as to bring them into perfect harmony with its new policy. This failure of provision, however, if indeed there was such failure, cannot be remedied by the courts, but must be left to the Legislature itself for amendment. If it is thought necessary to make the ballots available as evidence in criminal proceedings, the Legislature can do so under such limitations and restrictions as may be deemed necessary or essential to their integrity.

The courts cannot open them for inspection without destroying all safeguards, except such as each judge who may order them into court shall see proper to apply, nor without impairing in all cases, and possibly destroying in many, their value as evidence for the only purpose for which the law has directed their preservation.'' In that case the court was dealing with a statutory provision as to secrecy, whereas in this case, this court must act in view of the Constitution of the State, and the answer here must be, as it was in State ex rel. v. Francis, that if the people of the State deem it necessary to make the ballots available as evidence in criminal proceedings, then the people must amend or change the Constitution, before this court can do so. In Ex parte Arnold, responding to this same question, it was said: ''But it is asked, how can this conclusion be reconciled with the laws enacted to punish fraud by judges and clerks of election, as provided by section 3748, Revised Statutes 1889, and with the general powers of a grand jury? We answer that it is upon precisely the same principle which prevents the disclosure of confidential and privileged communications. There are doubtless many instances in which the evidence of a husband would convict the wife, or the wife's would settle the guilt of her husband, and yet the law in its wisdom seals his or her mouth. Likewise the testimony of attorney, priest or physician might establish beyond all doubt the guilt of the client, penitent, or patient in a given case, and yet it is excluded. These exceptions are based upon the peace of society, but, in the estimation of the people of Missouri, good government itself is dependent upon absolute inviolability of the ballot, except in a 'contested election,' and then only under such safeguards as would insure both the secrecy of the ballot and absolute verification of the election as held by the people. These two considerations gov-

erned the convention in framing, and the people in adopting, the Constitution."

In Montgomery v. Dormer, 181 Mo. l. c. 15, it was said by this court: "The rule of law that demands of a party the best evidence of a fact to be proven is qualified to mean that the party must produce the best evidence available to him. [11 Am. and Eng. Ency. Law (2 Ed.), 535.]" And further on in the same opinion it was said: "The court had no authority to order the clerk to open the ballots and ascertain how these thirteen men had voted and report the same to the court; neither did the court have authority to require the clerk to bring the ballots into court for inspection and exposure. Even if the procedure required in those sections just referred to could have been resorted to for the purpose of ascertaining how these men voted, the evidence thereby offered would have been secondary; it would not have been the ballots themselves in court, but it would have been only the clerk's certificate of their contents. [Ex parte Arnold, 128 Mo. 256.] The best evidence therefore (if the ballots were the best evidence) was not available to the contestant, and, therefore, secondary evidence was admissible." The conclusion reached by this court in its interpretation of section 3 of article 8 of our Constitution in all of the foregoing cases is in harmony with that of the Supreme Court of Michigan in People ex rel. v. Cicott, 16 Mich. 283, and the Supreme Court of California in Ex parte Brown, 97 Cal. 83.

As against this long line of our own decisions and those decisions of the highest courts of other States, we are cited to the case of In re Massey, 45 Fed. 629, in which the United States District Court for the Eastern District of Arkansas held that the laws of the United States concerning elections at which Congressmen are elected, are paramount, and the Arkansas statute providing that "the judges of election

shall securely envelop all the ballots which may have been received under seal and return the same to the clerk of the proper county, which shall in no event be opened except in case of a contested election," could not be held to justify the refusal of the clerk to produce the ballots before the grand jury of the United States pending an investigation of alleged violation of Federal election laws. We have given due consideration to the argument of Judge WILLIAMS in that case, but it has failed to convince us that our construction of our own Constitution is wrong, and we see no reason for departing from those decisions.

Counsel have also offered us excerpts from the discussions of the members of the constitutional convention of 1875 on this subject. It is evident there was a very considerable number of the constitutional convention who were in favor of returning to the *viva voce* system of voting. It appears that Mr. Shanklin of Grundy county proposed the following as a substitute for what is now section 3 of article 8 in these words: "All elections by the people shall be by ballot and all ballots shall be subject to inspection and examination in all cases of contested elections and *judicial proceedings* under such regulations and safeguards as may be provided by law." The convention having rejected the *viva voce* system of voting, also rejected the amendment of Mr. Shanklin, and adopted section 3 of article 8 with the amendment of Mr. Gottschalk, which consisted of the words: "Provided, that in *all cases of contested elections* the ballots cast may be counted and compared with the list of voters and examined under such safeguards and regulations as may be authorized by law." So that it distinctly appears that the convention rejected the proposition that the ballots should be subject to inspection and examination in "judicial proceedings," as proposed by Col. Shanklin, and restricted the right to inspection and examination in contested elections alone. So

that an examination of these debates, instead of changing our views as to the proper construction of this provision of the Constitution, has but strengthened us in the conviction that this article of the Constitution was properly construed in State ex rel. v. Francis, 88 Mo. 557, and in all of our cases which have since followed that opinion.

It results that in our opinion Judge Taylor, as the judge of the St. Louis Court of Criminal Correction, exceeded his power and authority when he issued the writ of subpoena *duces tecum* to the election commissioners to produce the ballot boxes and to open the ballots therein contained, and therefore that the provisional writ of prohibition heretofore issued in this cause should be made permanent and it is so ordered. *Valliant, C. J.,* and *Burgess* and *Fox, JJ.,* concur; *Lamm, J.,* dissents; *Woodson* and *Graves, JJ.,* not sitting.