**STATE of Missouri, Respondent,**

v.

**Robbin G. STEWART, Appellant.**

**No. WD 47474.**

Missouri Court of Appeals, Western District.

Nov. 9, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 28, 1993.

Application to Transfer Denied Feb. 22, 1994.

Daniel Viets, Columbia, for appellant.

Daniel K. Knight, Asst. Pros. Atty., Boone County, Columbia, for respondent.

Before TURNAGE, C.J., and FENNER and ELLIS, JJ.

ELLIS, Judge.

Robbin G. Stewart was charged by Information with speeding in violation of § 304.-010, RSMo 1986. The case was tried to the court sitting without a jury, and he was found guilty. Stewart later filed a Motion for New Trial which was also overruled, after which he was sentenced to pay a fine of $90.00. From that judgment, Stewart perfected this appeal. We affirm.

August 4, 1992, was primary election day in Missouri. Stewart, who resides in Columbia, went to his polling place at the Stephens College Gymnasium early that morning to exercise his franchise. After voting, he began traveling to his regular place of employment and, while en route on U.S. Highway 63 in Boone County, was stopped by a Missouri highway patrol officer for speeding. While stopped, he informed the officer he had just finished voting in the primary election. The officer then began preparing a uniform traffic ticket, when he was informed by radio of an outstanding warrant on Stewart from Callaway County. Stewart was taken into custody, and transported to the Boone County Jail, from which he was released later in the day.

At the time of trial, Stewart moved to dismiss the case against him, claiming that he was privileged from arrest under Mo. Const. art. VIII, § 4. The motion also requested appointment of a special prosecutor. The court overruled the motion and denied the request for a special prosecutor.

Stewart's first point on appeal asserts that the trial court erred in overruling his motion to dismiss the speeding charge because he was privileged against arrest by virtue of Article VIII, § 4 of the Missouri Constitution, which provides:

Voters shall be privileged from arrest while going to, attending and returning

from elections, except in cases of treason, felony or breach of the peace.

The state argues this provision is inapplicable because Stewart was not arrested for speeding, but rather on the Callaway County warrant. We need not decide this issue because we find the privilege provided by Mo. Const. art. VIII, § 4 is inapplicable to primary elections, and such finding is dispositive of Stewart's Point I.

The forerunner of current Article VIII, § 4 first appeared in the Missouri Constitution of 1865 [1]:

> Voters shall, in all cases, except treason, felony, or breach of the peace, be privileged from arrest during their continuance at elections, and in going to and returning from the same. Mo. Const. art. II, § 22 (1865).

Article II, § 22 of the 1865 Constitution was adopted without debate by the convention delegates in exactly the form it was submitted by the Committee on Elective Franchise. *Journal of the Missouri State Convention of 1865* 35 *passim* (St. Louis, Missouri Democrat 1865).

In the Constitution adopted in 1875, a similar provision was included:

> Voters shall, in all cases, except treason, felony, or breach of the peace, be privileged from arrest during their attendance at elections, and in going to and returning therefrom. Mo. Const. art. VIII, § 4 (1875).

This section, which was part of an article on suffrage and elections submitted by the Committee on Elections and Electors, was also adopted by the convention delegates without debate or amendment. 5 *Debates of the Missouri Constitutional Convention of 1875* 5–6, 35 (Isidor Loeb & Floyd C. Shoemaker eds., 1938).

The Committee on Suffrage and Elections of the Missouri Constitutional Convention of 1922 was the body next assigned the task of studying Article VIII, and it had for its consideration 23 proposals which were referred to it by the convention. Harry B. Kies & Carl A. McCandless, *Manual on the Bill of Rights and Suffrage and Elections* 45 (1943). Two of them, Proposals No. 9 and 159, dealt with the subject matter of Article VIII, § 4.[2] *Id.* at 48. In particular, Proposal No. 9 suggested the following substitute for the 1875 version of Article VIII, § 4:

> Voters shall, in all cases, except treason, felony or breach of the peace, be privileged from arrest during their attendance at elections *and primaries* and in going to elections *and primaries* and returning therefrom. Missouri Constitutional Convention of 1922, *Proposal No. 9*, at 1 (1922) (emphasis added).

This substitute was rejected by the Committee on Suffrage and Elections, which submitted in its report to the convention a draft Article VIII, § 4 described as "the same as section 4 of the present Constitution." Missouri Constitutional Convention of 1922, *File No. 2—Report of the Committee on Suffrage and Elections* 5 (1922).[3] The committee version of Article VIII, § 4 was approved by the convention delegates as submitted, H. Kies & C. McCandless, *supra,* at 48, and the section

---

1. Voters enjoyed a roughly parallel statutory grant of immunity from arrest even before Missouri became a state. An 1814 territorial law provided that "judges, clerks, constables and electors shall be free from arrest in all civil matters while going to, attending and returning home from any election...." Act of Jan. 4, 1814, 1 Terr.Laws of Mo., p. 301, § 23. In 1822, the Second General Assembly declared that "[a]ll judges, clerks, and voters, shall be free from arrest (except for felony or breach of the peace) in going to, attending on, and returning from, all elections." Laws of Mo.1822, p. 31, § 20. This statute and its successors were in continuous effect until 1977. *See, e.g.,* § 110.040, RSMo 1959, repealed and reenacted, § 111.251, RSMo 1969, repealed, Laws of Mo.1977, p. 207, § 1.

2. Proposal No. 159 is irrelevant to this discussion. It merely suggested that the word "voters" in the 1875 version of Article VIII, § 4 be replaced with the phrase "all sovereign citizens." Missouri Constitutional Convention of 1922, *Proposal No. 159*, at 3 (1922).

3. The significance of this action becomes even more pronounced when one considers that the same committee submitted to the convention and the voters subsequently approved an amended version of Article VIII, § 3 which specifically added "nominating elections" to its coverage. *Id.* at 2, 5; H. Kies & C. McCandless, *supra,* at 47.

was approved by the voters of Missouri on February 26, 1924, in the following form:

Voters shall in all cases except treason, felony, or breach of the peace be privileged from arrest during their attendance at elections, and in going to and returning therefrom. Laws of Mo.1925, p. 410.

The constitutional provision under which Stewart claims immunity from arrest was drafted by the Committee on Suffrage and Elections of the Missouri Constitutional Convention of 1943–1944, which recommended that Article VIII, § 4 be enacted in the same form approved by the voters in 1924. *Journal of the Constitutional Convention of Missouri 1943–1944* 3, 8 (Jan. 6, 1944). After being slightly rearranged and rephrased, it was adopted by the convention delegates in its present form without debate. Missouri Constitutional Convention of 1943–1944, *File No. 2—Report No. 1 of Committee No. 23 on Phraseology, Arrangement and Engrossment* 4 (1944); *Journal of the Constitutional Convention of Missouri 1943–1944* 5 (May 10, 1944).

The unsuccessful 1922 attempt to expand the scope of Article VIII, § 4 to include primaries as well as general elections did not escape the notice of the members of the Committee on Suffrage and Elections, even though none of the proposals before the committee involved that particular section. Missouri Constitutional Convention of 1943–1944, *File No. 2—Report of the Committee on Suffrage and Elections* 3 (1944). In a statement on Article VIII, § 4, the committee wrote:

Your Committee recommends no change in this section. It first appeared in the Constitution of 1875 and has been re-adopted by the people in 1924. In the last convention, it was suggested that it might be extended to primary elections. However, no proposal was offered to this Convention suggesting this action. The word, "elections" has been construed not to mean primary elections. (*State ex rel. vs. Hartmann*, 231 S.W. 982; *State ex rel. vs. Taylor*, 220 Mo. 618 [119 S.W. 373].) Your Committee has no recommendation as to this possible amendment. Missouri Constitutional Convention of 1943–1944, *File*

*No. 2—Report of the Committee on Suffrage and Elections* 8 (1944).

In *State ex rel. Feinstein v. Hartmann*, 231 S.W. 982 (Mo. banc 1921), the Supreme Court of Missouri construed the meaning of the word "elections" as used throughout the Missouri Constitution of 1875. The Court stated, 231 S.W. at 985:

The term "elections," as used in the Constitution of the state, does not include within its meaning elections held merely to nominate candidates for office. As a necessary consequence the provisions of the Constitution which govern elections do not, of their own force, and by virtue of their presence in the Constitution, have any application to primary elections, or any questions concerning them.

*State ex rel. Von Stade v. Taylor*, 220 Mo. 618, 119 S.W. 373 (banc 1909) was cited by the *Hartmann* court for its holding that the term "election" in the Constitution "is used in the sense of choosing a person or persons for office by vote, and nowhere in the sense of nominating a candidate for office by a political party." 220 Mo. at 631, 119 S.W. at 376 (quoting *Dooley v. Jackson*, 104 Mo.App. 21, 30, 78 S.W. 330, 333 (1904)).

■ Words and their contexts used in a prior Constitution and construed by the Supreme Court of Missouri, when employed in a later Constitution, are presumed to have been adopted with their adjudicated meaning, unless a contrary meaning is manifest. *Ludlow–Saylor Wire Co. v. Wollbrinck*, 275 Mo. 339, 355, 205 S.W. 196, 199 (banc 1918).

■ In *Hartmann* and *Taylor* our Supreme Court determined that the word "elections" as used in the Missouri Constitution of 1875 did not encompass primary elections. Since the same term has been employed in both versions of Article VIII, § 4 enacted since those cases were decided, applying the *Wollbrinck* rule of construction we hold that the word "elections" as used in Mo. Const. art. VIII, § 4 (1945) does not include primary elections.[4]

■ We therefore hold that since Stewart was returning from voting in a primary election at the time he was stopped for speeding,

---

4. The 1922 rejection of Proposal No. 9 by the same committee which added the phrase "in-

cluding nominating elections" to Article VIII, § 3 and the 1944 acknowledgment of that rejection

he enjoyed no privilege from arrest under Article VIII, § 4, and his motion to dismiss on those grounds was properly denied by the trial court.[5]

In his second point, Stewart argues that the trial court erred in failing to appoint a special prosecutor in that the prosecutor's bias and personal interest in the outcome of his case denied him constitutional due process.

Disqualification of a prosecutor is only called for when he has a personal interest of a nature which might preclude his according the defendant the fair treatment to which he is entitled. *Brewster v. State*, 577 S.W.2d 911, 914 (Mo.App.1979). Stewart's motion to dismiss, in which he requested the appointment of a special prosecutor on those grounds, was necessarily directed to the trial court's sound discretion. § 56.110, RSMo 1986; *State v. Choate*, 722 S.W.2d 643, 647 (Mo.App.1986). The only evidence Stewart adduced in support of his request for a special prosecutor was contained in an affidavit supporting his motion, in which Stewart stated that shortly before being stopped for speeding, he had voted in the Democratic primary for David Raithel, who was running against then Boone County Prosecutor Joe Moseley. The trial court did not abuse its discretion in refusing to disqualify Moseley on the basis of this evidence, which is conclusory at best and wholly insufficient to justify disqualification. *State v. Harris*, 477 S.W.2d 42, 45 (Mo.1972).

Stewart's second point is denied and his conviction for speeding is affirmed.

All concur.

coupled with explicit references to *Hartmann* and *Taylor* make it clear that no contrary meaning was ever manifested with regard to the word "elections" in Article VIII, § 4. *See Hamilton v. Davis*, 217 S.W. 431 (Tex.Civ.App.1919) (a primary election may be included within the term "election" under some provisions of a state constitution and not included by the term in other provisions of the same constitution).

5. Although we express no opinion on the entirely separate question of whether the criminal offense of speeding constitutes "treason, felony or breach of the peace" as that phrase is used in Article VIII, § 4, we note that the United States Supreme Court has construed the nearly identical phrase "treason, felony, and breach of the peace" as used in U.S. Const. art. I, § 6, cl. 1 to comprehend *all* criminal offenses. *Williamson v. United States*, 207 U.S. 425, 435–46, 28 S.Ct. 163, 166–70, 52 L.Ed. 278 (1908).