Kathy Brown REEVES,
Plaintiff–Appellant,

v.

Mae Ruth BOCKMAN and Robert M.
Heller, Defendants–Respondents.

No. 25167.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 15, 2002.

Motion for Rehearing or Transfer
Denied Oct. 25, 2002.

Application to Transfer Denied
Nov. 5, 2002.

R. David Ray and George C. Fisher, West Plains, for Appellant.

Daniel T. Moore, John M. Albright, Poplar Bluff, and Robert Z. Oberzalek, Eminence, for Respondents.

PHILLIP R. GARRISON, Judge.

This case involves the interpretation of two Missouri statutes to determine whether the circuit court of Texas County ("trial court") has subject matter jurisdiction of a suit to contest the results of a Shannon County primary election for associate circuit judge. The trial court ruled that, while it was a court in an adjoining circuit [1]

1. Shannon County is located in the 37th Judicial Circuit; Texas County is located in the 25th Judicial Circuit which adjoins the 37th Judicial Circuit.

as described in § 115.575.1,[2] that statute did not apply to this primary election contest. Accordingly, it dismissed the case for lack of subject matter jurisdiction. We affirm.

In the August 6, 2002 primary election for the Democratic nomination for associate circuit judge of Shannon County, candidate Robert M. Heller ("Contestee") received 1,301 votes and candidate Kathy Brown Reeves ("Contestant") received 1,295 votes—a difference of less than one percent of the total number of ballots cast. On August 12, 2002, Contestant filed a two-count petition in the circuit court of Texas County contesting the results of the primary election, in which she alleged that the trial court had jurisdiction pursuant to § 115.575.1, and that she was entitled to relief pursuant to §§ 115.601.1–.2.[3] In that petition, Contestant sought a recount of the vote, and requested that certain disqualified absentee ballots be included in that recount. Contestee filed an answer and a motion to dismiss Contestant's petition for lack of subject matter jurisdiction.[4] On September 3, 2002, the trial court held that a contest of the results of a primary election such as this is governed by § 115.531 and not § 115.575.1. The trial court dismissed the case for lack of subject matter jurisdiction because this suit was filed in Texas County, which is not located in the circuit in which part of this primary election was held as required by § 115.531.

In her sole point on appeal, Contestant contends that, contrary to the ruling of the trial court, § 115.575 is applicable to this case because that statute specifically refers to contested elections for the office of circuit or associate circuit judge. That statute directs that "[a]ll contested elections for the office of ... associate circuit judge ... shall be filed in and heard and determined by an adjoining circuit court selected by the contestant." Contestant thus argues that the circuit court of Texas County, as a court in an adjoining circuit, has subject matter jurisdiction. Conversely, Contestee contends that § 115.531 applies, since the contested election is a primary election, and requires that it be filed in any circuit in which part of the election was held and in which any alleged irregularity occurred. We agree with Contestee.

Because the issue raised here involves purely a matter of law, and does not involve questions of fact, our review is essentially *de novo*. *Baris v. Layton*, 43 S.W.3d 390, 397 (Mo.App. E.D.2001). Accordingly, we give no deference to the trial court's judgment in such matters. *Id.*

"The right to contest an election exists by virtue of statute; it is not a

**2.** References to statutes are to RSMo (2000) unless otherwise indicated.

**3.** Section 115.601.1–2, RSMo (2000), states:
1. Any contestant in a primary or other election contest who was defeated by less than one percent of the votes cast for the office and any contestant who received the second highest number of votes cast for that office if two or more are to be elected and who was defeated by less than one percent of the votes cast, or any person whose position on a question was defeated by less than one percent of the votes cast on the question, shall have the right to a recount of the votes cast for the office or on the question.

2. In cases where the candidate filed or the ballot question was originally filed with an election authority as defined in section 115.015, such recount shall be requested in accordance with the provisions of section 115.531 or 115.577 and conducted under the direction of the court or the commissioner representing the court trying the contest according to the provisions of this subchapter.

**4.** Mae Ruth Bockman, the elected county clerk of Shannon County was also named as a defendant, and filed a motion to dismiss attacking the jurisdiction of the trial court.

common law or equitable right." *Board of Election Comm'rs of St. Louis County v. Knipp*, 784 S.W.2d 797, 798 (Mo. banc 1990); *State ex rel. Jackson County v. Waltner*, 340 Mo. 137, 100 S.W.2d 272, 275 (1936). *See also State ex rel. Wilson v. Hart*, 583 S.W.2d 550, 551 (Mo.App. E.D. 1979) ("The right to contest an election exists only as defined by statute, and the jurisdiction of the circuit court is confined strictly to those statutory provisions governing election contests."). The Missouri Supreme Court has held that "election contest statutes are a code unto themselves. The procedures there established are 'exclusive and must be strictly followed as substantive law.'" *Foster v. Evert*, 751 S.W.2d 42, 44 (Mo. banc 1988) (quoting *Hockemeier v. Berra*, 641 S.W.2d 67, 69 (Mo. banc 1982)). "[C]ourts are without jurisdiction to entertain a petition for relief where none is specifically granted by statute." *Hockemeier* at 68.

"A primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider words in the statute in their plain and ordinary meaning." *Day v. Wright County*, 69 S.W.3d 485, 490 (Mo.App. S.D.2000); "Where the language of a statute is clear and unambiguous, we will give effect to the language as written and will not resort to statutory construction. If construction is necessary, we will construe a statute, or a provision thereof, in context. In order to shed light on a statute's meaning, appellate courts may consider other statutes that involve similar or related subject matter." *Cantwell v. Douglas County Clerk*, 988 S.W.2d 51, 55 (Mo.App. S.D.1999) (citations omitted). Further, statutes that relate to the same subject "are to be considered together and harmonized if possible so as to give meaning to all provisions of each." *Id.* (quoting *State ex rel. Lebeau v. Kelly*, 697 S.W.2d 312, 315 (Mo.App. E.D.1985).)

■ Section 115.531 states:

Not later than five days after the official announcement of the results of a *primary election* is issued by the election authority or the secretary of state, as the case may be, *any candidate desiring to contest the primary election shall file a verified petition in the office of the clerk of the circuit court of any circuit in which part of the election was held and in which any alleged irregularity occurred.* The contestant shall only be required to file one petition with the circuit court for each election contest regardless of the number of counties within the court's jurisdiction. The petition shall set forth the points on which the contestant wishes to contest the election and the facts the contestant will prove in support of such points, and shall pray leave to produce such proof. The judge of the court shall immediately note on the petition the date it was filed and shall immediately set a date, not later than five days after the petition is filed, for a preliminary hearing. If the petition is filed in vacation, the judge of the circuit court shall immediately convene the court in special session for the purpose of hearing the contest. If no regular judge of the court is available the supreme court shall immediately assign another judge. The circuit court in which the petition is filed shall have exclusive jurisdiction over all matters relating to the contest and may issue appropriate orders to all election authorities in the area in which the contested election was held.

(emphasis added.)

■ The other statute at issue here, § 115.575, states:

1. All contested elections for the office of circuit or associate circuit judge not subject to the provisions of article V, section 25 of the state constitution shall be filed in and heard and determined by an adjoining circuit court selected by the contestant.

2. All contested elections on any office or question other than those provided for in sections 115.555, 115.563 and subsection 1 of this section shall be heard and determined by the circuit court of any circuit, selected by the contestant, in which all or any part of the election was held and in which any alleged irregularity occurred. The contestant shall only be required to file one petition with the circuit court for each election contest regardless of the number of counties within the court's jurisdiction.

The plain language of § 115.601.2, upon which Contestant relied in filing her petition in this case, makes it clear that § 115.531 applies here. Section 115.601.2 directs that a "recount shall be requested in accordance with the provisions of section 115.531 or 115.577...." Section 115.531 specifically refers to primary elections, and specifies that the petition be filed in "the circuit court of any circuit in which part of the election was held and in which any alleged irregularity occurred." As § 115.531 relates to this case, Texas County would not have subject matter jurisdiction here because it is not a part of the circuit in which this primary election took place and in which any alleged irregularity occurred.

▮ Section 115.577, also referred to in § 115.601.2, provides, in pertinent part, that "[n]ot later than thirty days after the official announcement of the election result by the election authority" an authorized person "who wishes to contest the election for any office or on any question provided in section 115.575 shall file a verified petition in the office of the clerk of the appropriate circuit court." Note that § 115.575 refers to an "election." Our supreme court has said that the term "election" in the constitution "is used in the sense of choosing a person or persons for office by vote, and nowhere in the sense of nominating a candidate for office by a political party." *State ex rel. Von Stade v. Taylor*, 220 Mo. 618, 119 S.W. 373, 375 (1909). *Taylor* was cited by the supreme court in *State ex rel. Feinstein v. Hartmann*, 231 S.W. 982, 985 (Mo. banc 1921), when it said that "[t]he term 'elections,' as used in the Constitution of the state, does not include within its meaning elections held merely to nominate candidates for office," and "[a]s a necessary consequence the provisions of the Constitution which govern elections do not, of their own force, and by virtue of their presence in the Constitution, have any application to primary elections, or any questions concerning them." Later, the western district of this court cited both *Taylor* and *Hartmann* in saying that "the word 'elections' as used in the Mo. Const. art. VIII, § 4 (1945) does not include primary elections." *State v. Stewart*, 869 S.W.2d 86, 89 (Mo.App. W.D.1993). Accordingly, we hold that, by its reference to the unqualified term "election," § 115.577 applies to a general election as opposed to a primary election.

Contestant relies on *Dally v. Butler*, 972 S.W.2d 603 (Mo.App. S.D.1998), in support of her contention that § 115.575.1 applies to primary election contests between judicial candidates and that, therefore, the circuit court of Texas County has subject matter jurisdiction of this case. *Dally*, however, is distinguishable from the present case.

*Dally* involved a challenge to the qualifications of a candidate in a primary election for circuit judge of the 29th Judicial Circuit, consisting of only Jasper County.

There, the contestant filed suit in Jasper County pursuant to § 115.526, alleging that the contestee had not been a qualified voter in Missouri for the requisite period. *Id.* at 604. Section 115.526, in addition to authorizing the filing of a challenge to the qualifications of any candidate, whether in a primary or general election, says that "[e]xcept as provided in sections 115.563 to 115.573, challenges shall be made by filing a verified petition with the appropriate court as is provided for in case of a contest of election for such office in sections 115.527 to 115.601."

In *Dally*, we held that § 115.575.1 applied, so that the suit filed in Jasper County was not filed in the "appropriate court" as required by § 115.526.1, but instead should have been filed in "an adjoining circuit court selected by the contestant." *Dally* at 607. Here, contestant analogizes that since *Dally* involved a primary election among candidates for circuit judge, § 115.575 likewise applies in this case, and the circuit court of Texas County has subject matter jurisdiction. Contestant's analysis in this regard is flawed in several respects.

First, we noted in *Dally* that the result in that case was based on "a close inspection of § 115.526.1," the statute under which that suit was filed. *Id.* at 606. Here, the suit was filed pursuant to § 115.601, not § 115.526.1. As indicated above in our discussion of § 115.601, § 115.531 is to be followed in a primary election contest, and it mandates that the suit be filed in a circuit in which part of the election was held and in which any alleged irregularity occurred.

In *Dally*, we also noted, in discussing § 115.526.1, that it "makes no distinction between a challenge to the qualifications of a candidate for *nomination* to an office at a *primary* election and a challenge to the qualifications of a candidate for *election* to an office at a *general* or *special* election." *Id.* at 606–07. Rather, that statute directs the filing of a contest to the "qualifications" of a candidate in a primary or general election to be filed in a court authorized to hear a contest "of election for such office." We said that "[c]learly, the 'appropriate court' for a contest of *election* to the office of circuit judge not subject to the nonpartisan selection process is 'an adjoining circuit court selected by the contestant,'" citing § 115.575.1. *Id.* at 607. However, we emphasized that the suit there was "a challenge to a candidate's *qualifications*—a suit authorized by § 115.526.1. It is not a suit under § 115.531 ... contesting the *results* of a primary election." *Id.* This indicates to us that the decision in *Dally* hinged on that distinction.

Summarizing, *Dally* highlighted the distinction between candidates for nomination to an office in a primary election, and candidates for election to an office at a general or special election, notwithstanding the fact that § 115.526.1, the statute involved in that case, did not differentiate between them. In *Dally*, we also said that, under § 115.575.1, the appropriate court in which to file a contest to an *election* to the office of a circuit judge is an adjoining circuit court. Based upon the aforementioned distinction between candidates for nomination to an office at a primary election and candidates for election to an office at a general or special election, it is clear to us that *Dally* indicates that § 115.575.1 is intended to be applicable to contests involving the "election to the office" of circuit judge at a general election. This is entirely consistent with the earlier discussion that "election" means choosing a person for an "office" as opposed to a primary election. Accordingly, we hold, contrary to Contestant's argument, that *Dally* does not stand for the proposition

that a contest of the results of a primary election for a party's nomination for associate circuit judge is controlled by § 115.575.1.

Further supporting our decision is the timing mechanisms included in § 115.531 and § 115.575. While Contestant contends that "common sense" suggests § 115.575 is applicable here, since that statute pertains specifically to contested elections for associate circuit judges and circuit court judges, we conclude that, to the contrary, common sense suggests the applicability of § 115.531, rather than § 115.575.1, since it reflects the legislative intent that primary election contests are to be resolved expeditiously. We already have noted that a primary rule of statutory construction is to ascertain the intent of the legislature from the language used and to give effect to that intent if possible. *Day,* 69 S.W.3d at 490; *Cantwell,* 988 S.W.2d at 55. The Missouri Supreme Court stated in *Hockemeier v. Berra* that the intent of the Comprehensive Election Act of 1977 (§§ 115.001 to 115.641, and § 51.460) is "that a primary election contest case is to be concluded prior to the general election." *Hockemeier,* 641 S.W.2d at 68–69. *See also Black v. Bockenkamp,* 607 S.W.2d at 176, 177–78 (Mo.App. E.D.1980). In *Hockemeier,* the trial court did not order a new primary election, and the Missouri Supreme Court ruled that the appeal from that ruling was moot when the primary election could not be completed prior to the general election. *Hockemeier,* 641 S.W.2d at 69.

Consistent with the intent of the Comprehensive Election Act, a contested primary election must be concluded as soon as possible, so as not to interfere with the general election process. We find that § 115.531 more adequately satisfies this intent, as its provisions set forth a much more timely resolution of election contests. It provides that a candidate desiring to contest the results of a *primary election* shall do so "[n]ot later than five days after the official announcement of the results of a primary election." Other portions of § 115.531 stress the need for quickly resolving a contest to a primary election, stating: "the judge of the court shall *immediately* set a date, not later than five days after the petition is filed, for a preliminary hearing .... the judge of the circuit court shall *immediately* convene the court in special session for the purpose of hearing the contest ... If no regular judge of the court is available the supreme court shall *immediately* assign another judge." *Id.* (emphasis added). Other statutes dealing with contests of primary elections likewise have provisions for accelerated scheduling. *See* §§ 115.533, .535, .537, .549.

Comparatively, § 115.575 and the statutes that follow it dealing with election contests present a far less accelerated timetable for resolution. Section 115.577 provides that a person authorized under § 115.553 or § 115.575 may contest the results of an election "[n]ot later than thirty days after the official announcement of the election result by the election authority." Section 115.579.3 allows the contestee to file an answer up to fifteen days after the petition is filed. Section 115.581 allows for further delay so that the court can appoint a commissioner to take witness testimony, depositions, and conduct other discovery related to the contested election. No timetable is imposed upon the circuit court to consider the claim.

The difference between the time constraints involved in resolving a contested primary election and those involved in resolving a contested election for an office is readily apparent: § 115.531 establishes a much shorter timetable than does § 115.575. The legislative intent for

prompt resolution of a contested primary election would not be satisfied were this court to apply § 115.575 instead of § 115.531.

We find that § 115.531 deals specifically with contested primary elections, including those for nomination for associate circuit judge; its application to this case is mandated by § 115.601.2; and it more closely adheres to the legislative intent that primary elections be immediately resolved. The trial court's dismissal for lack of subject matter jurisdiction is affirmed.

MONTGOMERY, P.J., and BARNEY, J., concur.